Opinion by Judge REINHARDT; Dissent by Judge CALLAHAN.
OPINION
REINHARDT, Circuit Judge:
Joe Leonard Lambright appeals the decision of the district court to modify the protective order issued in his federal habeas proceeding to permit Respondent to turn over materials produced during the federal proceeding to the agency that will prosecute his resentencing, the Pima County Attorney’s Office. The district court granted Respondents’ motion for modification, reasoning that the protective order covered only materials disclosed after the issuance of the order, that Lam-bright did not rely on the protective order, that any privileged material lost protection under the order when it became part of the public record during the evidentiary hearing, and that Lambright had failed to explain the basis for his assertion that certain materials were privileged. We hold that the district court abused its discretion in granting the motion for modification as to materials that are privileged. First, the language of the protective order covers all materials, not just materials produced after its issuance, and, in any event, the failure to enter the order before the commencement of discovery was an abuse of discretion. Second, the protective order was sufficient to protect the materials introduced at the evidentiary hearing, and Lambright was entitled to rely on the assurances made by the district court that evidence introduced during the evidentiary hearing was protected by the order. Third, the district court did not request that Lambright explain the basis for asserting that certain materials were privileged, and erred in failing to recognize that his waiver of the Fifth Amendment privilege was limited; thus its modification of the protective order as to those materials was an abuse of discretion. We therefore vacate the portion of the order relating to privileged materials and remand to *812 the district court for further proceedings to resolve all disputes as to which specific materials are privileged and thus are covered by its protective order. We hold, however, that the district court did not abuse its discretion in modifying the protective order so as to exclude from its coverage non-privileged material, and therefore affirm that portion of its order.
Lambright also appeals the decision by the district court to deny his motion for discovery and an evidentiary hearing prior to the imposition of sanctions on Respondents for violating the protective order and for disqualification of the Arizona Attorney General’s Office from representing Respondents at the sanctions evidentiary hearing. We hold that the district court did not abuse its discretion in denying the motion for discovery and an evidentiary hearing. The parties had a full opportunity to brief the issue, and based on the evidence before it, the district court concluded that the violation of the protective order was inadvertent. Because we hold that the district court did not abuse its discretion in failing to hold an evidentiary hearing, the disqualification of the Arizona Attorney General’s Office from representing Respondents is moot.
BACKGROUND
In 1987, Lambright filed a federal habeas petition under 28 U.S.C. § 2254 in the Arizona District Court. In his petition, Lambright argued inter alia that he was denied effective assistance of sentencing counsel. The district court dismissed that claim, finding that it was procedurally defaulted. We reversed and remanded “for an evidentiary hearing.... to determine whether Lambright was denied effective assistance of counsel at sentencing because of the failure to investigate and present evidence of his psychiatric condition and social history.” Lambright v. Stewart (Lambright I), 241 F.3d 1201, 1208 (9th Cir.2001).
On remand, between July 26, 2001 and August 26, 2003, the district court entered several discovery orders. On July 26, 2001, the district court ordered that discovery be conducted pursuant to Rule 6(b) of the Rules Governing Section 2254 Cases,[1] and instructing the parties to engage in informal discovery. Starting on June 18, 2002, the district court ordered Lambright and Respondents to disclose the names of all witnesses and a summary of their anticipated testimony, to exchange expert reports, and to produce all raw data and background documents and information used by the experts. On February 11, 2003, the district court granted Respondents’ motion for an order requiring the Arizona Department of Corrections to provide copies of Lambright’s medical and mental health records. On July 14 and 18, 2003, the district court granted Respondents’ motions to allow state experts, Dr. Anne Herring and Dr. Gina Lang, to examine Lambright. On August 26, 2003, the court granted Respondents’ motion to depose Lambright and his trial counsel, Carmine Brogna; it also authorized each party to depose experts.
On September 2, 2003, Lambright moved for a protective order, noting that Respondents intended to ask “questions, at his deposition, concerning the crime that [he] was convicted of,” which he argued would be irrelevant and violate his Fifth Amendment right against self-incrimination. Lambright requested the protective order to prevent that “deposition testimo *813 ny [from being] used against him at the new sentencing hearing.” The district court held oral argument on September 19, 2003, during which Lambright’s counsel requested that the motion for a protective order be deemed a motion to prevent Respondents from deposing Lambright. The district court relied on two cases, Bean v. Calderon, 166 F.R.D. 452 (E.D.Cal.1996), which held that a habeas petitioner could be deposed subject to invocation of his Fifth Amendment right, but that an adverse inference could be drawn from such invocation, and Bittaker v. Woodford, 331 F.3d 715 (9th Cir.2003) (en banc), in which we held that a habeas petitioner waives his attorney-client privilege in a proceeding raising an ineffective assistance of counsel claim, but that such waiver is narrow and limited to what is necessary to allow the state to fairly defend against such claim. The court granted the protective order, but denied the request to preclude Respondents from deposing Lambright. When Lambright’s counsel inquired as to the scope of the protective order, the district court responded that it would be described in the order itself.
On September 23, 2003, the district court issued a protective order with the following parameters:
IT IS FURTHER ORDERED that all discovery ¿granted to Respondents, including the requests to depose sentencing counsel Brogna, Petitioner’s experts and Petitioner, shall be deemed to be confidential. Any information, documents and materials obtained vis-a-vis. the discovery process may be used only by representatives from the Office of the Arizona Attorney General and only for purposes of any proceedings incident to litigating the claims presented in the petition for writ of habeas corpus (and all amendments thereto) pending before this Court. None may be disclosed to any other persons or agencies, including any other law enforcement or prosecutorial personnel or agencies, without,, an order from this Court. This Order 'shall continue in effect after the conclusion of the habeas corpus proceedings and specifically shall apply in the event of a resentencing, except that either party maintains the right to request modification or vacation of this Order upon entry of final judgment in this matter.
IT IS FURTHER ORDERED that Respondents’ deposition of Petitioner must specifically relate to assertions Petitioner has made in this habeas petition (or amendments thereto), and for which it is likely that Petitioner has personal knowledge. The questions must be phrased in such a manner that they are directly linked to the federal claim upon which Petitioner is being deposed. Petitioner may assert his Fifth Amendment privilege, but the assertion of that privilege may be cause for the Court to draw an adverse inference in this habeas proceeding.
In November 2003, the district court held a six-day evidentiary hearing on the ineffective assistance of sentencing counsel claim.- During the cross-examination of Lambright, Respondents asked questions related to his crime of conviction. Lam-bright invoked his Fifth Amendment right, and his counsel entered a standing objection to all questions related to the crime. The court responded:
THE COURT: ... Mr. Lambright, I should mention I have also issued a protective order so that should the petition be granted, either now or at some later time and there is a new sentencing hearing in this case, your testimony concerning the crimes in this case that you would not otherwise answer but decide to answer could not be used against you in connection with that hearing. So *814 there is not a risk of your testimony and statements concerning the crimes in this case being used against you in a future healing in connection with this case insofar as resentencing.
MR. ADDIS (counsel for Lambright): Your Honor, I understand the Court’s protective order. Actually, I had thought until just now that it had just applied to the discovery deposition that we did, but I’m also aware of case law which indicates that matters brought up in a hearing like this can later be used in a resentencing, so I would say that our understanding of the law is that it’s unclear at this time whether the Court’s protective order would hold up at a later resentencing in terms of anything Mr. Lambright might say here.
THE COURT: Well, I can’t imagine the judge that would admit the evidence when any testimony concerning the crimes was given on the assurance of the judge before the testimony was given that that testimony could not be used in connection with the resentencing, and that is the order that I have entered, so I think they would have to disregard the protective order that I have issued and I suspect you would be very successful in precluding any use of it, so I don’t think it’s a realistic risk.
The court allowed Respondents to continue cross-examining Lambright with questions related to his crime of conviction, which Lambright refused to answer. On August 30, 2004, the district court denied Lam-bright habeas relief on his ineffective assistance of sentencing counsel claim. We reversed, vacated his death sentence, and instructed the state court to conduct a new sentencing proceeding. Lambright v. Schriro (Lambright II), 490 F.3d 1103 (9th Cir.2007).
On October 10, 2008, Respondents filed a Motion to Modify Protective Order with the district court, requesting that the protective order be modified to allow the Pima County Attorney’s Office access to materials produced during the federal habeas proceeding. Rather than respond to the modification motion, Lambright filed a Motion for Order to Show Cause on November 3, 2008, alleging that Respondents violated the protective order by sending protected materials to the Pima County Attorney’s Office without first seeking modification of the order. On December 3, 2008, the district court issued an order addressing the parameters of the protective order. The court stated that although it had mistakenly omitted the word “privileged” from the protective order, it was evident from Bean and Bitbaker, the cases upon which the court relied, that only privileged materials were covered. Thus, it modified the order “so that it will be narrowly tailored to solely protect documents and information that qualify for protection under the Fifth Amendment or the attorney-client privilege.” The court then granted Lambright an opportunity to “identify the specific information or materials he asserts should be protected from use at his resentencing.”
Instead of responding to the order, Lambright filed an appeal. On March 24, 2009, the district court held.*that its December 2008 order was not final or 'appeal-able, and proceeded to vacate the protective order and deny the motion for an order to show cause. Lambright appealed the March 2009 order as well. On appeal, we held that we lacked jurisdiction over the December 2008 order, but that we had jurisdiction to review the March 2009 order. Lambright v. Ryan (Lambright III), 359 Fed.Appx. 838, 840 (9th Cir.2009). We held that we could not review the denial of the motion for an order to show cause on the record before us, and we therefore vacated the order and remanded “so that *815 the court may resolve any disputed factual questions and make factual findings regarding the circumstances surrounding, and the extent and effect of, the violation and then determine whether sanctions are warranted.” Id. Moreover, we noted that, as a result of his premature appeal, Lam-bright “never responded to the court’s request that he identify material that was protected,” and “had no opportunity to explain whether, in his view, non-ymileged material or material that did not emerge through the discovery process warranted protection, given this court’s rationale in Bittaker v. Woodford: ‘If a prisoner is successful in persuading a federal court to grant the writ [of habeas corpus], the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free.’” Id. at 841 (quoting Bittaker, 331 F.3d at 722) (alteration and emphasis in original). Because the district court did not have the information necessary to rule on the modification motion, we vacated the modification order and remanded for further proceedings. Id.
On remand, the district court ordered supplemental briefing from both parties. The court ordered Respondents to address the extent and cause of the protective order violation, and any prejudice Lambright might have suffered as a result of the violation. The court ordered Lambright to “set forth inter alia the specific statements or information he contends are privileged and should be protected from use at his resentencing.”
Respondents’ supplemental brief asserted that any violation of the protective order was inadvertent, and submitted affidavits from Patricia Nigro and Kent Cattani, attorneys in the Arizona Attorney General’s Office, stating that they were unaware that the file contained materials covered by the protective order. Concerning the extent of the violation, Respondents contended that the materials in the file were not protected because “most, if not all, of the evidence at issue was presented in open court with no suggestion that the court proceedings would remain under seal.” Respondents also argued that the prejudice to Lambright was minimal because the Pima County prosecutor had “avowed” not to look at any protected materials absent authorization from the district court, any mental health information fell outside the scope of the protective order because it was disclosed prior to the issuance of the order, and Lambright had put his mental health at issue at resentencing.
In his supplemental brief, Lambright identified the materials that he asserted were protected by the attorney-client, work product, and Fifth Amendment privileges, and non-privileged materials that he argued should be covered by the order and barred from use at resentencing in order to return him to the position he would have been in had his first sentencing been constitutionally error-free. Lambright also filed a Motion for Discovery and an Evidentiary Hearing Relating to Petitioner’s Motion for an Order to Show Cause and Motion to Disqualify the Office of the Arizona Attorney General. Lambright argued that resolving the issue of the violation of the protective order based on the parties’ briefs would inadequately develop a factual record, and that the Arizona At? torney General’s Office should be disqualified from representing Respondents prior to the requested evidentiary hearing because some of its attorneys would be necessary witnesses at the hearing.
Respondents filed a reply, arguing that the court should affirm its order vacating the protective order. Respondents argued that Lambright waived any privilege to his mental health information when he placed *816 his mental health at issue in his resentencing proceeding, that he did not rely on the protective order because his counsel, was only concerned with testimony regarding the crime of conviction, did not seek to seal the evidentiary hearing, and disclosed mental health information prior to the issuance of the order, that he waived the attorney-client and work product privileges when he raised his ineffective assistance of counsel claim, and, even if not waived, he did not provide any explanation of how the materials listed in his brief were subject to a privilege, and that the Fifth Amendment privilege was inapplicable because Lambright refused to answer questions regarding his crime of conviction.
The district court issued its decision on May 4, 2010. The court denied the motion to disqualify the Arizona Attorney General’s Office from representing Respondents, finding that there was no pending “trial” and that “any testimony from [its] lawyers or staff would be in regard to the ‘nature ... of legal services rendered in the case’ and thus exempt from [the advocate-witness rule].” The court also denied the motion for discovery and an evidentiary hearing on the violation of the order, finding that based on the sworn affidavits by the Arizona Attorney General’s Office attorneys, “there are no disputed issues of material fact.” The court found that Lam-bright did not suffer any prejudice from the disclosure of the file to the Pima County Attorney’s Office because the materials had not been used at his resentencing proceeding, and because Lambright had failed to show that those materials could not have been obtained from public records of the federal evidentiary hearing. Although the court acknowledged that Respondents violated the “plain language of the protective order,” it agreed that the file was “inadvertently” sent and, rather than preclude the use of the materials, the court directed the retrieval of the file as a sanction.
The district court then addressed the modification of the protective order. The court held that because the “protective order ... does not state that it applied retroactively ... the only materials that fall within the scope of the order are those that were disclosed after the order issued on September 23, 2003.” The court further held that Lambright did not rely on the protective order because he engaged in discovery prior to its issuance, had “sought only a narrow protective order,” and refused to answer questions related to the crime of conviction even after the order was issued. The court acknowledged that it “inadvertently omitted the word ‘privileged’ in its protective order,” but held that “it is apparent when considered in context with the original motion and oral argument in support of the, motion, that the Court intended its protective order to address only the concerns set forth in Bean and Bittaker.” Although Lambright identified materials that he claimed were privileged, and thus should remain subject to the protective order, the court rejected the assertion of privilege, faulting Lam-bright for failing to explain the basis for the privilege asserted. The court also declined to extend protection to non-privileged material, based on the “status quo” language from Bittaker, reasoning that upholding the broad protective order would lead to duplicative discovery in the resentencing proceeding. Lastly, the court found that all evidence presented during the federal evidentiary hearing became public record because Lambright did not request that any materials be sealed. The court held that the assurances given to Lambright during the evidentiary hearing concerned only his testimony about the crime and not all materials introduced during the evidentiary hearing. Accordingly, *817 the district court modified the protective order so that it would “remain in effect only as to the transcript of [Lambright’s] deposition,” but granted a stay pending appeal.
This appeal followed.
DISCUSSION
I.
We first address the modification of the protective order, and review for abuse of discretion. See Beckman Indus., Inc. v. Int’l Ins. Co., 966 F.2d 470, 472 (9th Cir.1992) (“The court reviews the grant of a protective order for abuse of discretion, ... as well as a request to modify a protective order.”) (citations omitted).[2] “In general terms we have held that a district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the district court committed a clear error of judgment.” United States v. Ressam, 679 F.3d 1069, 1086 (9th Cir.2012) (en banc) (internal quotation marks, alteration, and citation omitted). Even if the district court identifies the correct legal standard, it abuses its discretion if its “application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.” United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc) (internal quotation marks and citation omitted).
A.
As noted above, the district court, in considering the scope of the protective order, determined that it covered only materials produced after the order was issued on September 23, 2003. This determination was an abuse of discretion for two reasons. First, its interpretation of the text of the protective order is illogical. The district court reasoned that the protective order applied only to those materials produced after its issuance because the order did not specifically state that it applied retroactively. The order, however, states that it applies to “all discovery granted to Respondents” and to “[a]ny information, documents and materials obtained vis-a-vis the discovery process.” The common meaning of the word “all” is “the whole amount, quantity, or extent of; as much as possible,” and the common meaning of the word “any” is “one or some indiscriminately of whatever kind: one or another taken at random; every — used to indicate one selected without restriction.” All and Any Definition, Merriam-Webster Dictionary, http://www.m-w.com (last visited October 4, 2012). The absence of a specific statement that the order applies retroactively does not alter the ordinary meanings of these words. To the contrary, in the absence of any limitation, the only logical reading of the order is that it applies to the entirety of materials produced in the federal habeas proceeding, whether before or after issuance of the protective order. It is illogical to say, as the district court does here, that the words “all” and “any” do not really mean “all” and “any” but instead mean “only the materials produced after this order.” Nothing in the record supports the district court’s reading of the order. Its attempt to limit the scope of the order to those *818 materials produced after September 23, 2003, is illogical and therefore an abuse of discretion. See Hinkson, 585 F.3d at 1262. The dissent argues that we should not read the text of the September 23 order literally because it was issued in response to a motion that “only sought prospective relief for testimony to be given at a deposition.” Dissent at 833. This argument ignores the fact that the district judge himself instructed the parties to look to the text of his order in order to determine its scope. After oral argument on September 19, 2003, the court indicated it intended to grant a protective order and Lambright’s counsel asked what its scope would be. The district judge responded: “Well, it will be set out. I will issue an order that will describe what that is.” We take the district judge at his word.
Second, the district court abused its discretion because it had a duty to enter a protective order prior to ordering the disclosure of privileged materials. In Bittaker, we delineated the scope of the waiver of the attorney-client and work product privileges when a federal habeas petitioner raises a claim of ineffective assistance of counsel. 331 F.3d at 716-17, 722 n. 6. We held that, although that petitioner impliedly waives his attorney-client privilege, such waiver is narrow and does not extend beyond the adjudication of the ineffectiveness claim in the federal habeas proceeding. Id. at 720-25. In order to protect that limited waiver, we stated that
district courts have the obligation, whenever they permit discovery of attorney-client materials as relevant to the defense of ineffective assistance of counsel claims in habeas cases, to ensure that the party given such access does not disclose these materials, except to the extent necessary in the habeas proceeding. ...
Id. at 727-28 (emphasis added). We explained that parties in habeas cases, “unlike those in ordinary civil cases, have no right to discovery,” and that discovery is available if, and only “to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so.” Id. at 728 (internal quotation marks and citations omitted). “If a district court exercises its discretion to allow such discovery ..., it must ensure compliance with the fairness principle. To that end, it must enter appropriate orders clearly delineating the contours of the limited waiver before the commencement of discovery, and strictly police those limits thereafter.” Id. (emphasis added).
Despite this clear holding, the dissent insists that Bittaker does not require the protective order to be issued at the commencement of discovery on a habeas petitioner’s ineffective assistance claim because “the doctrine of implied waiver does not arise when a habeas petition is filed, but only once a defendant brings a question of privilege to the court’s attention.” Dissent at 835. We disagree. The defendant impliedly waives his attorney-client privilege the moment he files a habeas petition alleging ineffective assistance of counsel.[3] See Bittaker, 331 F.3d at 716 (“It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer.”); see also id. at 719 (quoting 3 Jack B. Weinstein & Margaret *819 A. Berger, Weinstein’s Federal Evidence § 503.41[1], at 503-104.1 to .2 (Joseph M. McLaughlin ed., 2d ed. 2003) for the proposition that attorney-client privilege “may be found to have been waived by implication when a party takes a position in litigation that makes it unfair to protect that party’s attorney-client communications” (emphasis added)). Subsequent orders by the district court merely serve to clarify the scope of the waiver. This is why a district court is obligated under Bittaker to issue a protective order prior to authorizing discovery on a defendant’s ineffective assistance claim “to ensure compliance with the fairness principle.”[4] Bittaker, 331 F.3d at 728.
Here, the district court entered an order in July 2001, authorizing the parties to engage in discovery. After that, the court entered several orders for production of information and materials to Respondents, including: several orders starting in June 2002, ordering Lambright and Respondents to disclose the names of all of his witnesses and to provide a summary of their anticipated testimony, to exchange expert reports, to engage in informal discovery including witness interviews and document exchanges without further court supervision, and to produce all raw data and information used by the experts; an order in February 2003, granting Respondents access to Lambright’s medical and mental health records from the Arizona Department of Corrections; two orders in July 2003, granting Respondents’ motions to allow state experts to examine Lam-bright; and an order in August 2003, allowing Respondents to depose Lambright and his trial counsel, and authorizing the deposition of experts.[5] Yet, the district court did not enter the protective order until September 23, 2003, after Lambright filed a motion raising concerns about his deposition testimony, and only two months prior to the evidentiary hearing. Under Bittaker, however, the district court had the obligation, in ordering the production of discovery on the ineffective assistance of counsel claim, to “enter appropriate orders clearly delineating the contours of the limited waiver before the commencement of discovery.” 331 F.3d at 728 (emphasis added). The court knew that Lambright, in his federal habeas petition, was litigating the ineffectiveness of his sentencing counsel, and that engaging in discovery necessarily meant that Lambright would be forced to reveal information protected by the attorney-client and work product privileges. As a consequence, the court had “the obligation, [in] permitting] discovery of attorney-client materials as relevant to the defense of ineffective assistance of counsel claim[ ], to ensure that the party given such access does not disclose these materials, except to the extent nee *820 essary in the habeas proceeding.” Id. at 727-28 (emphasis added). Its failure to enter the protective order prior to September 2003, as required under Bittaker, was an error of law and thus an abuse of discretion. See Ressam, 679 F.3d at 1086.
B.
The district court, citing Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1134 (9th Cir.2003), also held that, because Lambright did not attempt to seal any discovery materials submitted during the evidentiary hearing, those materials became part of the public record and are no longer covered by the protective order. This determination also constitutes an abuse of discretion. First, there is no indication in Bittaker that the protective order entered by the district court is insufficient by itself to protect the narrow waiver of the attorney-client and work product privileges and to prevent the disclosure and use of materials in a resentencing proceeding. Bittaker offers no reason to provide less protection for privileged information disclosed in an evidentiary hearing than for privileged information disclosed during pretrial discovery. In fact, where, as here and in Bittaker, the purpose of a protective order is to allow a party to disclose materials in a habeas proceeding but not in subsequent litigation (as opposed to shielding the evidence from the public), it would render the order practically useless to hold that disclosing the materials in the habeas hearing deprives that material of protection in the subsequent litigation. Moreover, the language in Bittaker supports the conclusion that its holding extends to the entire habeas litigation, not to pretrial discovery only. In that case, we explained that the state courts “remain free, of course, to determine whether [the petitioner] waived his attorney-client privilege on some basis other than his disclosure of privileged information during the course of the federal litigation.” 331 F.3d at 726 (second emphasis added); see also id. at 722 (“[W]e can conceive of no federal interest in enlarging the scope of the waiver beyond what is needed to litigate the claim of ineffective assistance of counsel in federal court. A waiver that limits the use of privileged communications to adjudicating the ineffective assistance of counsel claim fully serves federal interests.”) (emphasis added). Thus, under Bittaker, disclosure of protected material “during the course of the federal litigation” remains protected. Id. at 726. This necessarily extends beyond the discovery phase and includes the evidentiary hearing during which the petitioner presents his claim to the district court.
Foltz is not to the contrary. In Foltz we explained that materials that are sealed during discovery presumptively may not remain sealed once they are filed with the court for public policy reasons unless the materials in questions are of a type that “have traditionally been kept secret for important policy reasons.” 331 F.3d at 1134 (internal quotation marks and citation omitted). Attorney-client privileged materials, of course, are archetypical examples of material that has traditionally been kept secret for important policy reasons. See, e.g., United States v. Jicarilla Apache Nation, — U.S. -, 131 S.Ct. 2313, 2320, 180 L.Ed.2d 187 (2011). Consequently, the protective order was sufficient to protect Lambright from the disclosure and use of protected materials at resentencing, and his counsel was not required to seal the evidentiary hearing in order to ensure that such materials remained protected. The contrary determination by the district court constituted an error of law, and thus an abuse of discretion. See Ressam, 679 F.3d at 1086.
*821 Second, Lambright was entitled to rely on the assurances by the district judge, made during the evidentiary hearing, that the protective order extended to evidence introduced at the hearing. During the evidentiary hearing, after Lambright invoked his Fifth Amendment right to refuse to answer questions regarding his crime of conviction, the district judge stated to Lambright that he had “issued a protective order so that should the petition be granted ... your testimony concerning the crimes in this case that you would not otherwise answer but decide to answer could not be used against you in connection with that hearing.” The judge further reassured Lambright that his testimony could not be used against him at resentencing because “that is the order that I have entered.” It is clear from this exchange that the district judge assured Lambright that the protective order would cover the evidence at the evidentiary hearing, not just the material exchanged during discovery.
In its order, the district court attempted to limit the scope of its assurances, stating that “[t]he record is clear that the Court offered during the evidentiary hearing an extension of the discovery protective order solely to protect any testimony by [Lam-bright] concerning the underlying crime.” The assurances, however, were not meant as an “extension of the discovery protective order.” The district judge represented to Lambright and his counsel that the protective order, as issued, fully covered the evidentiary hearing. At no point during the exchange at the evidentiary hearing did the judge suggest that he was extending or somehow modifying the scope of the protective order to cover the evidence at the hearing. Rather, the judge stated that he “ha[dj issued a protective order” that covered the testimony offered at the hearing, (emphasis added). The judge refers to the protective order, as already issued, protecting statements made during the evidentiary hearing. After Lambright’s counsel objected, specifically expressing a concern that “matters brought up in a hearing like this can later be used in a resentencing,” the district judge again referred to the protection of “the order that I have entered.” (emphasis added). To use the testimony from the evidentiary hearing at the resentencing, the judge assured Lambright, the state court “would have to disregard the protective order that I have issued.” (emphasis added). Notably, the district judge did not say that the state court would have to disregard his statements at the evidentiary hearing; rather, he referred to the protection granted by the already issued order. Clearly, the judge was not extending the protective order, as the district court now attempts to argue, but giving assurances regarding the scope of the already issued order. Moreover, although the assurances were made in the context of the testimony regarding the crime, as that was the testimony Lambright refused to give, there is no reason to believe that the protective order applied with any less force to other protected material introduced during the evidentiary hearing.
Thus, because the district judge assured Lambright and his counsel that the protective ordered covered evidence presented during the evidentiary hearing, Lambright was not required to seal the proceedings to protect his interests. Based on the assurances, Lambright reasonably believed that the protective order was sufficient to safeguard his rights, and that seeking to seal the proceedings “would have been redundant.” This court has held that “the explicit assurances that a judge makes ... must be consistent and worthy of reliance.” Perry v. Brown, 667 F.3d 1078, 1087 (9th Cir.2012). “Because [Lambright] reasonably relied on [the as *822 surances by the district judge that the protective order covered the evidentiary hearing], the setting aside of [that] commitment[] would compromise the integrity of the judicial process. The interest in preserving respect for our system of justice is clearly a compelling reason for” extending the protection of the order, notwithstanding the fact that the materials are now public record. Id. at 1088. In light of the assurances by the district court, the conclusion that Lambright forfeited protection of materials introduced during the evidentiary hearing was “(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record,” and thus an abuse of discretion. Hinkson, 585 F.3d at 1262 (internal quotation marks and citation omitted).
C.
Lambright, in his supplemental brief to the district court, identified the materials he asserted were covered under the protective order because of the attorney-client, work product, or Fifth Amendment privileges. The district court rejected the claim that the documents listed by Lambright in his supplemental brief should be protected because “it is simply not clear from [his] brief how or why the attorney-client or work-product privilege applies to these materials,” and because Lambright had not “identified any compelled testimony ... or otherwise explained how the Fifth Amendment right against self-incrimination is relevant to the ... documents.” In doing so, the district court abused its discretion.
The district court faulted Lambright for not providing an explanation of how or why the privilege applied to each item identified. The supplemental briefing order, however, only required that Lam-bright “set forth inter alia the specific statements or information he contends are privileged and should be protected from use at his resentencing.” That is, the district court asked that Lambright identify the documents he believed should remain protected. It did not require that Lambright show, for each material identified, why the asserted privilege applied. It is true that a “party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question.” United States v. Gray, 876 F.2d 1411, 1415 (9th Cir.1989). Given the wording of the order, however, it was not unreasonable for Lambright to believe, as he asserts on appeal, that the “grounds for claiming the privilege were hardly ‘unclear’ to the district court,” and that no explanation was required for the district court to rule on the modification of the order. Faulting Lambright for failing to make a showing that the briefing order did not require him to make was “(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record,” and the district court thus abused its discretion. Hinkson, 585 F.3d at 1262 (internal quotation marks and citation omitted).
The district court also abused its discretion in holding that Lambright had not shown that the Fifth Amendment privilege applied because he had not demonstrated that his testimony was compelled. It was not necessary for Lambright to show that his testimony was compelled. The Fifth Amendment prohibits use of his testimony at resentencing so long as it could be used to establish aggravating factors or to undermine his claim of mitigating factors, Estelle v. Smith, 451 U.S. 454, 462-63, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), and offering it was necessary to vindicate his constitutional rights in the habeas proceeding, Simmons v. United States, 390 U.S. 377, 388-94, 88 S.Ct. 967, *823 19 L.Ed.2d 1247 (1968). Thus, a waiver of the Fifth Amendment privilege is subject to the same limits imposed on the waiver of the attorney-client and work product privileges in Bittaker. That is, the waiver of the Fifth Amendment privilege in a habeas proceeding is narrow and courts must limit the use of any privileged testimony to litigation of the habeas claim. In Bittaker, we explained that a waiver of the attorney-client and work product privileges was implied out of fairness to the State, in that a habeas petitioner could not use “the privilege as both a shield and a sword.” 331 F.3d at 719. “The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it.” Id. at 720. Similarly, a waiver of the Fifth Amendment privilege is implied out of fairness to the State, and the petitioner is given a choice: If you want to litigate this claim, which puts your mental health and state of mind at the time of the crime at issue, you must waive your privilege to the extent necessary to allow the State a fair opportunity to defend against such claim. As in Bittaker, this justification means “that the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.” Id. Most important, failure to impose a narrow waiver “would force [the petitioner] to the painful choice of, on the one hand, asserting his ineffective assistance claim and risking a trial where the prosecution can use against him” any statements he may have made during the habeas proceeding “and, on the other hand, retaining the privilege but” abandoning his claim. Id. at 723. “This would violate the spirit, and perhaps the letter, of Simmons,” where the Supreme Court explained that “it would be constitutionally unacceptable to require a criminal defendant to choose between two constitutional rights.” Id. at 723 & n. 7 (emphasis in original). It is true that in some circumstances petitioners, including Lambright, are permitted to refuse to answer questions by asserting their Fifth Amendment privilege. The court, however, is permitted to draw a negative inference against the petitioner, which could jeopardize his chances of vindicating his constitutional rights. Moreover, some claims, such as the one asserted by Lambright in this case, cannot be asserted "without some waiver of the privilege. Simply put, Lambright could not simultaneously put his mental health at issue and then refuse to answer questions from mental health experts by asserting his Fifth Amendment privilege. Finally, the logic that a habeas petitioner should not be disadvantaged at retrial because his constitutional rights were violated in his first trial applies equally whether the disadvantage is the disclosure of attorney-client materials or the waiver of the Fifth Amendment privilege. See id. at 722. Therefore, as in Bittaker, the district court is required to ensure that, whenever a waiver of the Fifth Amendment privilege against self-incrimination is required to allow the State to fairly defend against a habeas claim, such waiver is narrow and the court must limit the use of any privileged material to the litigation of the habeas claim. Because the district court failed to recognize this narrow waiver, and required Lambright to show that his testimony was compelled, it committed an error of law and therefore abused its discretion. See Ressam, 679 F.3d at 1086.
Moreover, in ruling on the modification of the protective order without the information necessary to. make a proper determination, the district court abused its discretion. District courts have the obligation to “strictly police” the limits of habeas petitioners’ narrow waivers of the *824 attorney-client, work product and Fifth Amendment privileges during habeas proceedings. Bittaker, 331 F.3d at 728. The district court does not fulfill that obligation when it modifies a protective order and releases materials arguably subject to those privileges without first giving the petitioner a full opportunity to explain why such materials should remain protected. Yet that is what the court did in this case. In disregarding its obligation to “strictly police” the limits of the waivers of those privileges and releasing materials for use at resentencing without the information necessary to determine the appropriateness of such action, the district court abused its discretion.
Lambright also asserts that certain non-privileged materials should remain protected, pursuant to Bittaker, “to restore, him to the position he would have occupied, had the first trial been constitutionally error-free.” 331 F.3d at 722. The district court rejected this argument, finding “no support for such an expansive reading of Bittaker,” and reasoning that, taken to its logical conclusion, such a broad interpretation of the order would require that the materials developed by Lambright in the federal habeas proceeding be kept from his state sentencing counsel, forcing him to enlist new experts and reinvestigate mitigation. We hold that the district court did not abuse its discretion. To support his argument that non-privileged materials should be covered by the protective order and barred from use at resentencing, Lam-bright relies solely on language from our decision in Bittaker, stating: “If a prisoner is successful in persuading a federal court to grant the writ, the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free.” 331 F.3d at 722. This language, when read in isolation, seems broad. When read in context, however, it is clear that we were concerned with the disclosure of privileged materials, which the prosecution would not have had access to absent the constitutional error that necessitated a federal habeas proceeding. Lambright does not provide any other support for his position that non-privileged materials disclosed in the course of a federal habeas proceeding must be excluded from use at a resentencing. As such, we hold that the district court did not abuse its discretion in modifying the protective order authorizing the disclosure of non-privileged materials to the Pima County Attorney’s Office.
D.
For the foregoing reasons, we conclude that the district court abused its discretion in granting Respondents’ motion to modify the protective order as to materials covered by the attorney-client, work product, and Fifth Amendment privileges. The district court abused its discretion in holding that the protective order did not apply to any materials exchanged prior to its issuance; the clear text of the order covers all materials, not just those exchanged after the issuance of the order and, in any event, the district court had an obligation to enter the protective order prior to the commencement of discovery in the federal habeas proceeding. The September 23, 2003 protective order, therefore, applies retroactively. The district court also abused its discretion in holding that any materials lost protection under the order because Lambright failed to move to seal the evidentiary hearing; the protective order was sufficient to protect Lambright from the disclosure and use of privileged materials and, moreover, he was entitled to rely on the district court’s assurances that the protective order covered materials introduced at the evidentiary hearing. Finally, the district court abused its discretion in modifying the protective order without deter *825 mining whether materials were covered under the attorney-client, work product or Fifth Amendment privileges; the district court did not request that Lambright explain the basis for asserting that certain materials were privileged, and thus erred in faulting him for failing to do so, and also erred in failing to recognize the limited waiver of the Fifth Amendment privilege when a petitioner asserts a habeas claim. We therefore vacate that portion of the May 4, 2010 order and remand to the district court for further proceedings.
We affirm, however, the portion of the May 4, 2010 order modifying the protective order as to non-privileged materials. The portion of Bittaker that Lambright relies on concerns the disclosure of privileged materials, and Lambright has offered no other argument for why non-privileged materials should be excluded from use at his resentencing.
II.
We now turn to the denial of the motion for discovery and an evidentiary hearing on the sanctions issue, and for disqualification of the Arizona Attorney General’s Office from representing Respondents at the sanctions evidentiary hearing, and we review for abuse of discretion. See Paladin Assocs., Inc. v. Montana Power Co., 328 F.3d 1145, 1164-65 (9th Cir.2003) (reviewing district court’s imposition of sanctions and refusal to hold evidentiary hearing prior to imposing sanctions for abuse of discretion); United States v. Frega, 179 F.3d 793, 799 (9th Cir.1999) (reviewing district court’s ruling on motion for disqualification of counsel for abuse of discretion).
A.
In Lambright III, we remanded to the district court with instructions to “resolve any disputed factual questions and make factual findings regarding the circumstances surrounding, and the extent and effect of, the violation” of the protective order prior to determining “whether sanctions are warranted.” 359 FedAppx. at 840. On remand, the court ordered supplemental briefing from Respondents to explain the violation of the protective order and any prejudice that resulted from such violation, and afforded Lambright an opportunity to respond. After considering the supplemental briefing and affidavits submitted by the Arizona Attorney General’s Office, the court held that “neither discovery nor a hearing are necessary because there are no disputed issues of material fact.” The court noted that Lam-bright would like the opportunity to cross-examine the Arizona Attorney General’s Office to verify their story, but, after considering the challenges to their credibility raised by Lambright, found that “there is no basis for questioning the affiants’ veracity and holding a hearing to have counsel restate what is already in their affidavits would be a waste of time and resources.” The court thus determined that it had “sufficient knowledge of the facts to consider” the motion for sanctions. Considering those facts, the court found that Respondents “violated the plain language of the protective order when they provided materials obtained through the discovery process to the Pima County Attorney without first seeking modification of the protective order,” but that this was done “without willful intent to disobey” the order. Finally, the court determined that an order directing Respondents to retrieve the materials subject to the protective order was an appropriate sanction because “such sanction will restore the parties to the position they were in had Respondents not violated the protective order.”
“When necessary, the district court may hold an evidentiary hearing on a *826 motion for sanctions.” Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 592 (9th Cir.1983). Hence, the district court has the discretion, but is not required, to hold an evidentiary hearing prior to imposing sanctions on a party. Indeed, in cases in which the sanctioned party argued that it was deprived of due process because the district court failed to conduct an evidentiary hearing, where the standard is necessarily higher than it is here, as Lambright does not raise a due process argument, we have held that “[t]he opportunity to brief the issue fully satisfies due process requirements.” Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112, 1118 (9th Cir.2000).
Here, both parties were afforded an opportunity to fully brief the sanctions issue. Respondents submitted evidence to support their arguments that the violation of the protective order was inadvertent and did not cause prejudice, and Lam-bright had the opportunity to challenge that evidence and present his arguments in support of his position. The district court gave careful consideration to all of the evidence and arguments raised by the parties, and ultimately concluded that the material facts were not disputed and that, although Respondents violated the protective order, such violation was inadvertent and thus a severe sanction was not warranted. Instead, the court determined that ordering Respondents to retrieve the file from the Pima County Attorney’s Office was an appropriate sanction because it returned the parties to the same position they were in prior to the violation. The district court did not commit an error of law, and we cannot say that its findings were “(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.” Hinkson, 585 F.3d at 1262 (internal quotation marks and citation omitted). Therefore, the court did not abuse its discretion in failing to hold an' evidentiary hearing prior to the imposition of sanctions on Respondents for violating the protective order.
Because we hold that the district court did not err in failing to hold an evidentiary hearing on the sanctions issue, the motion for disqualification of the Arizona Attorney General’s Office from representing Respondents at that hearing is moot.
CONCLUSION
We affirm the portion of the district court’s May 4, 2010 order excluding non-privileged materials from the coverage of its protective order, but we hold that it erred in holding that: (1) the protective order applied only to privileged materials produced after its issuance; (2) the privileged materials introduced at the evidentiary hearing were no longer covered by the protective order because Lambright failed to move to seal the evidentiary hearing; and (3) the materials identified by Lambright as privileged were not protected because he failed to support his assertion of privilege by submitting written justifications to the district court. We therefore vacate those portions of the order pertaining to the numbered clauses supra. On remand, the district court shall allow Lambright an opportunity to support his assertions of privilege as to materials that he identified as protected by the attorney-client, work product, and Fifth Amendment privileges, and shall determine which materials fall within a privilege and are thus covered by the protective order.
We also conclude that the district court did not abuse its discretion in failing to hold an evidentiary hearing prior to the imposition of a sanction on Respondents for violating the protective order, and thus that the sanction, trivial as it may be, was *827 not invalid. Accordingly, we affirm that portion of the May 4, 2010 order as well. We do not reach the question whether the district court abused its discretion in denying the motion to disqualify the Arizona Attorney General’s Office from representing Respondents at the sanctions evidentiary hearing, as that issue is now moot.
AFFIRMED in part; VACATED in
part; REMANDED. Each party shall bear its own costs on appeal.

. Rule 6(a) states: "Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery.”

. We note that although this appeal arises out of habeas proceedings at the district court level, no certificate of appealability is required for us to exercise jurisdiction since we are not reviewing the district court's “final order[] that dispose[s] of the merits of [the] habeas corpus proceeding.” Harbison v. Bell, 556 U.S. 180, 183, 129 S.Ct. 1481, 173 L.Ed.2d 347 (2009).

. For the same reason, the dissent’s argument that Lambright expressly, rather than impliedly, waived his attorney-client privilege is incorrect. The privilege was impliedly waived when Lambright filed his ineffective assistance claim, so he could not later expressly waive the privilege by simply disclosing privileged documents without objection.

. Contrary to the dissent's assertions, we do not hold that a district court must issue a protective order the moment a habeas petitioner asserts an ineffective assistance of counsel claim. It must, however, do so prior to authorizing discovery on such a claim. Bittaker, 331 F.3d at 728.

. The dissent, on the basis of its review of the district court docket, claims that none of these orders can be interpreted as ordering discovery that might include material that was protected by the attorney-client privilege or the privilege against self-incrimination. This argument simply ignores the content of many of the orders listed on the docket. For example, on June 18, 2002 and September 13, 2002, the court ordered the parties to engage in "informal discovery, such as witness interviews and exchange of documents” which would have included attorney-client privileged documents. And, as mentioned above, the district court's August 26, 2003 order expressly authorized the deposition of Lam-bright and his attorney. We have no idea how our dissenting colleague can interpret these orders as not authorizing discovery that would include privileged information.