FILED

11/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0627

DA 16-0627

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 289

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

ROBERT LYSLE ROSE,

        Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twenty-First Judicial District, In and For the County of Ravalli, Cause No. DC 02-02 Honorable Jeffrey H. Langton, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

           Anthony R. Gallagher, Federal Defender, David F. Ness, Assistant Federal Defender, Great Falls, Montana

      For Appellee:

           Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

           William E. Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  September 6, 2017

Decided:  November 28, 2017

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Robert Lysle Rose (Rose) appeals from an order entered by the Twenty-First Judicial District Court, Ravalli County. The District Court's order was issued on remand from the United States District Court for the District of Montana (Federal District Court) after Rose applied for a writ of habeas corpus. The Federal District Court concluded Rose's trial counsel was ineffective and the proper remedy was to require the State to reoffer Rose an originally un-communicated and favorable plea proposal. The District Court rejected the reoffered plea and left the conviction undisturbed. We affirm.

¶2 We find the following issues dispositive:

1. *Did the District Court abuse its discretion in rejecting the reoffered plea agreement?*

2. *Did the District Court err in failing to allow Rose to withdraw his guilty plea?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On June 6, 2003, following the conclusion of a four-day trial, a jury convicted Rose of aggravated kidnapping, assault with a weapon, and assault on a peace officer. Rose's convictions stem from a January 2002 incident wherein Rose, high on methamphetamine, kidnapped his co-worker in Kalispell and forced him, at knifepoint, to drive Rose south for several hours towards Stevensville. The co-worker attempted to flee by jumping out of the vehicle, but Rose attacked him, stabbing him in the chest, neck, and throat. Both Rose and the victim were injured in the ensuing struggle and were taken to the hospital. The victim suffered near fatal injuries. At the Ravalli County Detention Center following his arrest, Rose sprayed detention staff with pepper spray that was

2

inadvertently left in the vehicle transporting him and which Rose had concealed in his underpants.

¶4    On August 10, 2003, the District Court sentenced Rose to four consecutive periods of commitment in the Montana State Prison:  a 50-year term with 20-years suspended for the aggravated kidnapping charge; a 20-year term for the assault with a weapon charge; a 10-year term for the assault on a peace officer charge; and an additional 20-year persistent felony offender (PFO) term.[1]   The total term was 100-years, with 20-years suspended.

¶5    Since 2003, Rose has engaged in more than a decade of litigation involving his convictions in both state and federal courts.  This is Rose's fourth appeal before this Court.  In *State v. Rose*, 2009 MT 4, 348 Mont. 291, 202 P.3d 749 (*Rose I*), we affirmed Rose's convictions.  In *Rose v. State*, No. DA 11-0419, 2012 MT 55N, 2012 Mont. LEXIS 59, we affirmed the court's grant of summary judgment to the State following Rose's petition for a declaration that the actions of the Montana Department of Corrections violated state open meeting and public participation laws.

¶6    In *Rose v. State*, 2013 MT 161, 370 Mont. 398, 304 P.3d 387 (*Rose II*), we considered Rose's contention that he received ineffective assistance of counsel (IAC) when his attorney, Kelli Sather (Sather) failed to communicate a plea offer which Sather believed was illegal.  Ravalli County Attorney George Corn (Corn) sent Sather a letter on

---

[1]   At the time the District Court imposed its sentence, this Court had not decided *State v. Gunderson*, which held that "sentences imposed on an offender's status as a [PFO] replace the sentence for the underlying felony."  *Gunderson*, 2010 MT 166, ¶ 54, 357 Mont. 142, 237 P.3d 74.

3

May 21, 2003, setting forth a proposed plea which contemplated dismissing the aggravated kidnapping charge and the assault on a peace officer charge if Rose entered into a non-binding plea agreement, under § 46-12-211(1)(c), MCA, to felony assault with a weapon and misdemeanor assault (Plea Offer). Corn would recommend consecutive sentences for the two offenses and would agree to a "consecutive" sentence for the PFO designation of 10-years with 5 suspended. Sather correctly recognized that the Plea Offer's separate sentence for Rose's designation as a PFO was proscribed by statute. Sather made a counteroffer in light of what she believed was an illegal plea offer without conveying the Plea Offer to Rose. Rose argued that Sather's failure to convey the Plea Offer to him was deficient pursuant to *Lafler v. Cooper*, 566 U.S. 156, 132 S. Ct. 1376 (2012), and *Missouri v. Frye*, 566 U.S. 134, 132 S. Ct. 1399 (2012). We affirmed the denial of Rose's petition for postconviction relief without addressing whether Sather's conduct was deficient because we concluded that the Plea Offer was unlawful and could not have been imposed by the District Court. We explained that Rose could not demonstrate prejudice because the remedy for IAC arising out of a rejected plea is "to order the State to reoffer the plea agreement."

¶7     On July 24, 2013, Rose applied for a writ of habeas corpus in Federal District Court pursuant to 28 U.S.C. § 2254(d)(1), arguing that our decision in *Rose II* was contrary to clearly established precedent of the United States Supreme Court and that *Rose II* was an unreasonable application of federal law. In Findings and Recommendation of U.S. Magistrate Judge Jeremiah C. Lynch (Judge Lynch), dated

4

January 6, 2016, the Federal District Court considered only two of Rose's claims to have merit. Relevant here, one of those claims was Rose's IAC claim pertaining to Sather's failure to communicate the Plea Offer. Additional discovery was authorized by the Federal District Court.

¶8 The depositions of Rose, Sather, and Corn were taken in June 2015 and provide some insight into the plea negotiations that occurred prior to Rose's trial 12 years earlier. Corn testified in his deposition that he made Rose two plea offers—an initial offer and the May 21, 2003 Plea Offer. In making the initial offer, Corn recollected meeting with Rose and his then-counsel Larry Mansch in-person at the jail. Corn could not recall the specific terms of his initial offer but, after their in-person conversation, Corn testified he "had the impression that [Rose] had accepted whatever it was that I had offered him." Rose, in his deposition, remembered that Corn's initial offer included the State reducing the aggravated kidnapping charge to kidnapping and recommending a 40-year maximum sentence and Rose pleading guilty to kidnapping, assault with a weapon, and assault on a peace officer. Corn testified Rose gave him the impression he would accept the initial plea after taking some time to consider it and consulting with his family. However, at a hearing held one week later, Rose told the District Court there had been insufficient time to consider the offer or discuss it with the various people he wanted to. Rose neither accepted nor rejected the initial offer stating, "I'm not totally turning down anything that Mr. Corn has offered." In his deposition, Rose testified that because he had not turned the offer down, he "always kept that in mind that that plea bargain would be there, that I

5

could accept." After Rose failed to accept Corn's initial offer, Corn testified he "felt [he] had gotten worked" by Rose.

¶9    Sather testified in her deposition that when she began representing Rose, she recalled believing that accepting a plea offer was in Rose's best interest, "[b]ut he was very against it. I mean, he was very focused on witnesses, discovery, what happened, and going to trial." Sather admitted Rose was "difficult" to work with and she "couldn't keep him focused on the things that [she] was trying to find out and trying to talk to him about the case." Sather testified that she received the Plea Offer on May 21, 2003. Sather remembered researching the PFO statute because of a term included in it and, as a result of her research, "thought that [the Plea Offer] was illegal." Sather met with Corn the following day, May 22, and made a counteroffer, but could not recall the terms of her counteroffer. Sather testified: "I just remember [Corn] being angry and pulling the plea offer, saying we [the State] won't agree to it. I mean, I said I made a counteroffer. I'm assuming I offered something similar." Sather could not recall whether she discussed the Plea Offer with Rose prior to meeting with Corn.

¶10   Corn remembered things differently. Corn testified that he recalled sending Sather the Plea Offer after first consulting with the victim. Corn testified that on May 22, 2003, Sather "came in and offered a much lesser sentence." Corn testified he remembered thinking "we're at the end of any negotiations. I've done what I could do for resolving the case without trial, but I'm not going any lower at this point, so I withdrew the offer." Corn did not recall a discussion about the Plea Offer containing an illegal provision or

6

becoming angry with Sather. Corn admitted he was "mistrustful of Robert Rose's sincerity at that point. I think at that point, too, I had gotten Judge Davis's judgment, . . . he was the judge in [Rose's 1995 felony] Beaverhead County case. And the reasons for his sentence, he talked about [Rose] being manipulative of court and counsel . . . ." Corn testified that the Plea Offer was a late effort to avoid the trial scheduled for June. When asked in his deposition whether he thought the Plea Offer was reasonable, Corn testified that it was "less than I thought that [Rose] should have, but it would have resolved the case and the victim would not have had to go through the trial." Corn testified, "[t]he victim was really cut horribly in this case" and was still having problems at the time Rose was sentenced. Corn continued:

> So this was [an offer] that would have spared [the victim] a trial. Do I think it was reasonable? No, I don't think it was harsh enough for [Rose] for what he had done, especially with his past history. But it would have resolved the case. And that is one of the considerations that I had as a prosecutor when you have a victim of a violent crime, start to get things behind him.

Corn admitted in his deposition that instead of being withdrawn, "If [the Plea Offer] was illegal, yeah, it would have been void." Finally, Corn testified that at sentencing the District Court imposed a sentence on Rose that was greater than what he ended up recommending and greater than what the presentence investigation recommended.

¶11 In its Findings and Recommendation dated May 5, 2016, Judge Lynch disagreed with our holding in *Rose II*, concluding that Sather's failure to communicate the Plea Offer to Rose was not excused by the offer's illegality. Judge Lynch determined that the Plea Offer exposed Rose to potentially 30-years with 5 suspended, which was favorable

7

to both the actual sentence imposed[2] and the maximum sentence of 220-years to which Rose was exposed[3] without a plea. In an order dated June 23, 2016, Federal District Judge Donald W. Molloy (Judge Molloy) adopted Judge Lynch's May 5, 2016 Findings and Recommendation in full and granted Rose's petition relating to his IAC claim. In its order, the Federal District Court directed:

> On or before June 30, 2016, the State is required to reoffer the equivalent terms of the plea agreement proposed on May 21, 2003. The state trial court can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1389 (2012) (providing instruction for exercising such discretion). If the State does not meet the deadline for reoffering the plea agreement, Rose shall be immediately released from custody. *See Nunes v. Mueller*, 350 F.3d 1045, 1057 (9th Cir. 2003) ("the constitutional infirmity would justify Nunes' release, but if the state puts him in the same position he would have been in had he received effective counsel, that would cure the constitutional error").

¶12 The State complied, reoffering Rose an equivalent plea, and Rose and his defense counsel signed the agreement on July 13, 2016. The reoffered plea agreement provided that Rose would plead either guilty or no contest to assault with a weapon, a felony in violation of § 45-5-213, MCA, and assault, a misdemeanor in violation of § 45-5-201(1)(a), MCA. In exchange, the State would dismiss the aggravated kidnapping felony charge and the assault on a peace officer felony charge. At sentencing, the State

---

[2] The sentence imposed by the District Court following the jury trial was for a total term of 100-years, with 20-years suspended.

[3] If convicted on all counts at trial and if all terms ran consecutively, Rose faced a maximum sentence of life or 100-years for aggravated kidnapping, § 45-5-303(2), MCA (2001); 10-years for assault on a peace officer, § 45-5-210(2)(a), MCA (2001); and 20-years for assault with a weapon, § 45-5-213(2)(a), MCA (2001). With a PFO designation, the maximum sentence on either the second or third count would be raised to 100-years, § 46-18-502(2), MCA (2001). Accordingly, the maximum available sentence would be 220-years without a plea agreement.

would recommend the District Court designate Rose as a PFO and require him to serve two consecutive periods of commitment for a total term of 30-years with 5 suspended.[4]

¶13    On August 11, 2016, the District Court held a change of plea hearing on the reoffered plea agreement. Rose, present with counsel, made a statement of apology to the District Court and several people involved in his trial for his behavior at trial. Rose acknowledged that at the time of the trial he had been selfish, would not accept others' advice, and perceived himself as a victim. Rose also read a letter of apology to the victim, who was not present, accepting responsibility for attacking him. In an order dated August 24, 2016, the District Court stated it viewed Rose's "expressed change of attitude and statement of apology" in a positive light; however, based on *Lafler*, the District Court rejected the reoffered plea agreement and left Rose's conviction undisturbed because Rose was unwilling to accept responsibility for his actions at the time the Plea Offer was made. The District Court explained:

> *Lafler* contemplates restoration, as much as possible, of the defendant and the prosecution to the positions they occupied prior to the date the plea offer was initially made. Significantly, *Lafler* states that a defendant's earlier expressed willingness or unwillingness to accept responsibility for his actions is a relevant consideration. Here, all parties are well aware of Defendant's failure to accept any responsibility for his actions back in 2003.
> 
> Upon consideration of the United States Supreme Court's discussion and directive in *Lafler*, and mindful of the Defendant's complete unwillingness to accept any responsibility for his actions at the time the *Plea Agreement* was initially offered:

---

[4] Although the State's recommendation was 10 years less than the Plea Offer, this was the term of the original offer calculated by Judge Lynch and adopted by Judge Malloy in the federal habeas corpus proceeding.

IT IS HEREBY ORDERED that the *Plea Agreement* is REJECTED. Defendant's conviction stands undisturbed.

(Emphasis in original and citations omitted).

¶14     Rose appeals.

## STANDARD OF REVIEW

¶15     The United States Supreme Court, in *Lafler*, recognized that when the prosecution is required to reoffer a plea proposal, the trial court should then "exercise its discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389. We review a district court's exercise of discretion for an abuse of that discretion. Therefore, a district court's decision to reject a reoffered plea agreement is reviewed for an abuse of discretion. *See Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389. A court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561 (citation omitted).

## DISCUSSION

¶16     *1. Did the District Court abuse its discretion in rejecting the reoffered plea agreement?*

¶17     Preliminarily, we recognize that where a state court has denied relief on the merits, a state prisoner may obtain federal habeas relief only if the state court's denial of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the state court's denial was "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1). Pursuant to 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [its] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519-20 (2000) (O'Connor, J. concurring). Rose applied for a writ of habeas corpus in Federal District Court pursuant to 28 U.S.C. § 2254(d)(1), arguing that our decision in *Rose II* was contrary to clearly established precedent of the United States Supreme Court and that *Rose II* was an unreasonable application of federal law. The Federal District Court agreed with Rose. Our decision concerns only whether the District Court abused its discretion in rejecting the reoffered plea agreement and leaving Rose's convictions and sentence undisturbed.

¶18    Rose argues that the Federal District Court concluded Rose had demonstrated he would have accepted the Plea Offer, which precluded the District Court from rejecting the reoffered plea agreement. The State argues *Lafler* and the Federal District Court's order gave the District Court discretion to conclude Rose would not have accepted the Plea Offer, which it properly exercised. We conclude the express terms of the remand order which state "[t]he state trial court can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed," allowed the District Court certain discretion in accepting or rejecting the

11

reoffered plea, provided the District Court's discretion was exercised in accordance with *Lafler*.

¶19    "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler*, 566 U.S. at 162, 132 S. Ct. at 1384 (citations omitted). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168, 132 S. Ct. at 1387. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145, 132 S. Ct. at 1408. A successful ineffective assistance of counsel claim requires "[f]irst, the defendant must show that counsel's performance was deficient," and "[s]econd, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Where the ineffective advice led not to an offer's acceptance but to its rejection, the prejudice is in having to stand trial. In these circumstances, a defendant must show that but for the ineffective assistance of counsel there is "a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms" would have been less severe than under the actual sentence imposed. *Lafler*, 566 U.S. at 164, 132 S. Ct. at 1385.

¶20    At issue in *Lafler* was "how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Lafler*, 566 U.S. at 163, 132 S. Ct. at 1384.  When counsel performs deficiently at the plea bargaining stage, *Lafler* recognized a defendant could suffer one of two forms of prejudice.  *Lafler*, 566 U.S. at 170, 132 U.S. at 1389.  One form occurs where a defendant would have received a lesser sentence on a charge or charges under a plea proposal, but instead is convicted at trial of the same charge or charges, and receives a greater sentence.  *Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389.  The remedy for this type of prejudice is to resentence the defendant.  *Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389 ("If the showing is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.").  The other form of prejudice, relevant here, occurs where the offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial.  *Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389.  The Court in *Lafler* determined the latter type of prejudice requires a different remedy:

> In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal.  Once this has occurred, the [trial] judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.

*Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389.

¶21    In *Lafler*, the United States Supreme Court declined to set a bright-line rule for trial judges to follow in deciding whether to accept a reoffered plea, reasoning that factors would develop over time. *Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389. *Lafler* did suggest two considerations a trial court should weigh in making its decision whether to accept a reoffered plea. First, a trial court should consider the "defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions." *Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389. Second, a trial court should consider "any information concerning the crime that was discovered after the plea offer was made." *Lafler*, 566 U.S. at 171-72, 132 S. Ct. at 1389. *Lafler* recognized "[t]he time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial." *Lafler*, 566 U.S. at 172, 132 S. Ct. at 1389.

¶22    At issue in *Missouri v. Frye*, a companion case to *Lafler* decided on the same day, was "whether defense counsel has the duty to communicate the terms of a formal offer to accept a plea on terms and conditions that may result in a lesser sentence, a conviction on lesser charges, or both." *Frye*, 566 U.S. at 145, 132 S. Ct. at 1408. In holding that defense counsel has a duty to communicate favorable plea offers, *Frye* instructs that for a defendant "[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had

14

they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147, 132 S. Ct. at 1409. Additionally, under *Lafler*, a defendant must show "that the court would have accepted" the offer's terms, "and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164, 132 S. Ct. at 1385.

¶23 Here, the District Court, at the change of plea hearing and in its order rejecting the reoffered plea, expressed "sincere doubts" that Rose would have "accepted the *Plea Agreement* back in 2003, when [Rose] was fully entrenched in his denial that he had done anything wrong and was blaming his unfortunate legal situation on the victim, the prosecution, and his defense attorneys." (Emphasis in original.) The District Court commented: "Now, we'll never know for sure, obviously. But Mr. Rose's whole approach to this case was to deny responsibility, to blame the victim and to do everything humanly possible to frustrate the judicial process to resolve the issue of his guilt or innocence." Citing *Lafler*, the District Court reasoned that Rose's earlier expressed unwillingness to accept responsibility for his actions was a relevant consideration: "*Lafler* contemplates restoration, as much as possible, of the defendant and the prosecution to the positions they occupied prior to the date the plea offer was initially made. . . . Here, all parties are well aware of [Rose's] failure to accept any responsibility for his actions back in 2003."

¶24 When the State is required to reoffer a plea proposal pursuant to *Lafler*, the trial court is allowed to exercise its discretion between two options: the trial court may either

15

vacate the defendant's conviction and accept the plea or leave the conviction undisturbed. *Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389. One consideration a trial court may make is whether the defendant was, at the time the plea offer was originally made, willing to accept responsibility for the crime. *Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389. Rose argues the Federal District Court already concluded he would have accepted the Plea Offer when it was originally made and the District Court was constrained by that conclusion. We disagree. *Lafler* and the Federal District Court invited the District Court to exercise its discretion between either vacating Rose's conviction and accepting the reoffered plea or leaving his conviction undisturbed. *Lafler* instructs consideration of the defendant's willingness to accept responsibility at the time the plea offer was first made. The District Court was familiar with Rose and his behavior at the time the Plea Offer was first made and concluded Rose would not have accepted it because he was unwilling to accept responsibility at the time it was first made.

¶25 Ample evidence in the record supports the District Court's conclusion that Rose would not have accepted the Plea Offer. Sather's testimony indicated Rose was "against" pleading and instead was intent and very focused on trial, certain witnesses, and various defenses, including that Rose lacked the requisite mental state, had been involuntarily intoxicated, or was acting in self-defense. Corn's testimony indicated he made an initial plea offer with favorable terms and Rose never accepted it. In fact, Rose always considered the initial plea offer available to him, but never attempted to accept it. In Rose's testimony at the change of plea hearing, held on August 11, 2016, Rose admitted

16

he was unwilling to accept responsibility for his actions prior to his 2003 trial. In his testimony, Rose prefaced his apologies by admitting that at trial he saw himself "as a victim" and that his situation "was everybody else's fault. It wasn't [his] fault." Rose admitted it had taken him some time in prison to accept responsibility and "get out of that victim mind-frame."

¶26 Based upon our review of the record, we cannot conclude the District Court abused its discretion by considering Rose's unwillingness to accept responsibility for his actions and rejecting the reoffered plea. Instead, the District Court was explicitly instructed by the Federal District Court to "exercise discretion" and use *Lafler* as a guide. *Lafler* clearly directs trial courts to consider a defendant's earlier expressed unwillingness to accept responsibility when determining whether to "accept the plea or leave the conviction undisturbed." *Lafler*, 566 U.S. at 171, 132 S. Ct. at 1389. Considering the District Court's sincere doubts Rose would have accepted the Plea Offer, other evidence in the record, and Rose's admission that at the time of his trial, he felt he was the victim, we conclude the District Court did not act arbitrarily, without conscientious judgment, or outside the bounds of reason and, therefore, did not abuse its discretion in rejecting the State's reoffered plea agreement.

¶27 *2. Did the District Court err in failing to allow Rose to withdraw his guilty plea?*

¶28 Rose signed a Guilty Plea and Waiver of Rights on July 28, 2016. Rose argues he should have been allowed to withdraw his guilty plea once the District Court rejected the reoffered plea agreement. The State responds by arguing that this Court should not

17

consider Rose's argument because he is raising it for the first time on appeal. Further, the State argues the Federal District Court correctly concluded allowing Rose to withdraw his plea would contravene the remedy outlined in *Lafler*. We agree with the State.

¶29    Rose relies on § 46-12-211(4), MCA, "If the court rejects a plea agreement . . . the court shall . . . afford the defendant the opportunity to withdraw the plea . . . ." Rose raised this issue in the Federal District Court. The Federal District Court found § 46-12-211(4), MCA, "inapplicable" to Rose's reoffered plea explaining, "*Lafler* plainly provides that when inadequate assistance of counsel causes nonacceptance of a plea offer and further proceedings led to a less favorable outcome, the conviction is to be left undisturbed if the trial court decides to reject the reoffer[e]d plea agreement." "[A] remedy must 'neutralize the taint' of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Lafler*, 566 U.S. at 170, 132 S. Ct. at 1388-89 (citations omitted). According to the Federal District Court, allowing Rose to withdraw his guilty plea if the District Court rejected it "would allow [Rose] to proceed [to] trial when he already received a jury trial free of constitutional error and according to *Lafler* the proper remedy should 'not require the prosecution to incur the expense of conducting a new trial.'" Section 46-12-211(4), MCA, contemplates plea agreement procedure occurring prior to trial and we agree with the Federal District Court, the statute is inapplicable to a rejected plea agreement reoffered after the defendant receives a full and fair trial.

18

¶30 We agree with the Federal District Court. Allowing Rose to withdraw his guilty plea is not required and contrary to *Lafler*. The District Court did not err by not allowing Rose to withdraw his guilty plea after it rejected the reoffered plea agreement.

## CONCLUSION

¶31 The District Court did not abuse its discretion by rejecting the reoffered plea agreement and leaving the convictions and sentence undisturbed. The District Court also did not err by failing to allow Rose to withdraw his plea after it was rejected.

¶32 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE