**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROBERT L. ROSE,
*Petitioner-Appellant*,

v.

LYNN GUYER; ATTORNEY GENERAL
FOR THE STATE OF MONTANA,
*Respondents-Appellees*.

No. 18-35630

D.C. No.
9:13-cv-00156-
DWM-JCL

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted February 4, 2020
Seattle, Washington

Filed June 18, 2020

Before: Milan D. Smith, Jr., N. Randy Smith,
and Daniel A. Bress, Circuit Judges.

Opinion by Judge N.R. Smith

**SUMMARY[*]**

**Habeas Corpus**

The panel denied Montana state prisoner Robert Rose a certificate of appealability (COA) and dismissed for lack of jurisdiction Rose's appeal from the district court's order denying his motion under Fed. R. Civ. P. 70(a) to enforce the district court's conditional writ of habeas corpus, in a case in which Rose was convicted, after a jury trial, of aggravated kidnapping, assault with a weapon, and assault on a peace officer, and sentenced to 100 years in prison with 20 years suspended.

The district court granted the conditional habeas writ on Rose's claim that his trial attorney rendered ineffective assistance by failing to inform him of the state's plea proposal. The conditional writ required the state to reoffer Rose equivalent terms of the original plea proposal. After Rose accepted the state's reoffered plea proposal, the state court rejected the final plea agreement. In his Rule 70(a) motion, Rose argued that the conditional writ entitled him to immediate release from an unconstitutional detention because the state did not reoffer him an equivalent plea proposal.

The panel held that an order denying a Rule 70(a) motion to enforce a conditional writ of habeas corpus pertains to the district court's adjudication of the habeas petition, and 28 U.S.C. § 2253(c)(1)(A) therefore requires a habeas

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

petitioner to obtain a COA in order to appeal the district court's order.

The panel denied Rose a COA because he failed to make the requisite showing under 28 U.S.C. § 2253(c)(2) that jurists of reason would find it debatable whether the district court abused its discretion in denying the Rule 70(a) motion. After taking an initial peek at the merits, the panel concluded that it is beyond reasonable debate that the district court did not abuse its discretion in concluding that the reoffered plea proposal and original plea proposal were equivalent with respect to the State's sentencing recommendations, conditions of supervision and waiver of the right to appeal, and treatment of Rose's status as a persistent felony offender. The panel therefore dismissed the appeal for lack of jurisdiction.

**COUNSEL**

David F. Ness (argued), Assistant Federal Defender; Anthony R. Gallagher, Federal Defender; Federal Defenders of Montana, Great Falls, Montana; for Petitioner-Appellant.

Tammy K. Plubell (argued), Assistant Attorney General; Timothy C. Fox, Attorney General; Attorney General's Office, Helena, Montana; for Respondents-Appellees.

## OPINION

N.R. SMITH, Circuit Judge:

Pursuant to 28 U.S.C. § 2253(c)(1)(A), a habeas petitioner must obtain a certificate of appealability ("COA") in order to appeal a district court's order denying a motion to enforce a conditional writ of habeas corpus, brought under Federal Rule of Civil Procedure 70(a). Such an order does pertain to the district court's adjudication of the habeas petition, thus requiring a COA. *See United States v. Winkles*, 795 F.3d 1134, 1142 (9th Cir. 2015); *see also Payton v. Davis*, 906 F.3d 812, 821 (9th Cir. 2018). Petitioner-Appellant Robert L. Rose ("Rose") appeals from the denial of his Rule 70(a) motion to enforce a conditional writ of habeas corpus. Upon application, the district court denied Rose a COA. Because he now fails to make the requisite showing under § 2253(c)(2) to permit us to issue a COA, we deny him a COA and dismiss his appeal for lack of jurisdiction.

## I

After Rose kidnapped and severely cut his co-worker with a knife and sprayed a law enforcement officer with a can of pepper spray, Rose was charged with aggravated kidnapping, assault with a weapon, and assault on a peace officer. More than a year later, with Rose's trial date approaching, the county attorney of Ravalli County (the "State") sent Rose's defense attorney a letter proposing the general terms of a plea agreement. The letter stated:

> In an effort to settle this case, I am willing to offer a plea agreement along the following lines:

I will dismiss the Aggravated Kidnapping charge and the felony Assault on a Judicial Officer if your client pleads "open" to Assault with a Weapon and a misdemeanor Assault which would run consecutively to the Assault with a Weapon.

Additionally, I would agree to cap the Persistent Felony Offender at 10 years with 5 suspended. This would run consecutive to the Assault with a Weapon. I would file an Amended Information with the above charges.

Each party is free to argue for what it deems is an appropriate sentence as to length and [Department of Corrections] versus [Montana State Prison].

Under this proposed plea, I have no objection to a "no contest" plea.

. . . .

All other terms and conditions, including the length of parole or probation, would be subject to argument by both sides with the final decision being made by the Court.

Upon receipt of the letter, Rose's attorney determined that the plea proposal contained an illegal provision under Montana law—Rose's attorney believed that the State could not charge or sentence Rose separately for his status as a persistent felony offender ("PFO"). Based on that belief, and before apprising Rose of the plea proposal, Rose's attorney

attempted to negotiate what he believed to be a valid plea proposal with the State the following day. But instead of negotiating, the State withdrew the offer and expressed its intention to go to trial.

After a four-day jury trial, Rose was convicted of all three counts and sentenced to 100 years in state prison with 20 years suspended. Rose's convictions and sentence were affirmed on direct appeal to the Montana Supreme Court. *See State v. Rose*, 202 P.3d 749, 768 (Mont. 2009). He was also denied post-conviction relief in the state courts. *See Rose v. State*, 304 P.3d 387, 395 (Mont. 2013).

Following the state-court post-conviction proceedings, Rose filed a habeas petition under 28 U.S.C. § 2254 in federal district court. He alleged a panoply of claims,[1] including a claim for ineffective assistance of counsel based upon his trial attorney's alleged failure to inform him of the State's plea proposal. On this claim, the district court granted Rose a conditional writ of habeas corpus ("Conditional Writ"), which ordered:

> On or before June 30, 2016, the State is required to reoffer the equivalent terms of the plea agreement proposed on May 21, 2003. The state trial court can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed. . . . If the State does not meet the deadline for reoffering

---

[1] The district court denied all of the rest of Rose's claims, and he does not appeal the decision as to those claims.

the plea agreement, Rose shall be immediately released from custody.

Rose appealed that order from the district court, challenging the adequacy of the remedy. *See Rose v. Kirkegard*, 720 F. App'x 406, 406 (9th Cir. 2018) (unpublished). We affirmed the district court, finding that it "ordered the remedy articulated by the Supreme Court for circumstances where 'inadequate assistance of counsel causes nonacceptance of a plea offer and further proceedings lead to a less favorable outcome.'" *Id.* (alterations adopted) (quoting *Lafler v. Cooper*, 566 U.S. 156, 160 (2012)).

Pursuant to the district court's Conditional Writ, the State sent Rose's new, federally appointed attorney a letter that reproposed the general terms of a plea agreement. The letter stated:

> [I]n compliance with [the Conditional Writ] the State will agree to the following terms, equivalent to [the] May 21, 2003 offer:
>
> 1. The State will move to dismiss the charges of Aggravated Kidnapping and Assault on a Judicial/Peace Officer;
>
> 2. Mr. Rose will plead guilty or no contest to the charges of Assault with a Weapon and misdemeanor Assault;
>
> 3. The State will recommend a sentence of;

  a. Assault with a Weapon: thirty (30) years, as a persistent felony offender, with five (5) years suspended; and

  b. Assault (misdemeanor): six (6) months jail time, consecutive to the sentence on the assault with a weapon;

 4. Mr. Rose will be free to recommend any lawful sentence.

. . . .

If [Rose] does accept this offer, I will formalize it in a standard plea agreement format used in Ravalli County for execution by all of us.

Rose accepted the State's plea proposal upon receipt. Thereafter, the State prepared a final plea agreement, which Rose and his attorney signed.

However, when the State and Rose presented the final plea agreement to the state trial court at the change of plea hearing, the court rejected it. The court stated it was rejecting the agreement because of Rose's "complete unwillingness to accept any responsibility for his actions at the time the [original plea proposal] was initially offered." As a result, Rose's convictions and sentence were left undisturbed. The state trial court's rejection of the final plea agreement was affirmed on appeal to the Montana Supreme Court. *See State v. Rose*, 406 P.3d 443, 448 (Mont. 2017).

After the state trial court rejected the final plea agreement and the Montana Supreme Court affirmed the rejection, Rose returned to federal district court to file a Federal Rule of Civil Procedure 70(a) motion to enforce the Conditional Writ. *See* Fed. R. Civ. P. 70(a) ("If a judgment requires a party . . . to perform [a] specific act and the party fails to comply within the time specified, the court may order the act to be done . . . by another person appointed by the court. When done, the act has the same effect as if done by the party."). For the first time, Rose argued that, because the State did not reoffer him an equivalent plea proposal, the State's failure to comply with the Conditional Writ entitled him to immediate release from an unconstitutional detention.

The federal district court denied the motion without a hearing. In deciding that the State had "timely and faithfully executed" the Conditional Writ, the court rejected the suggestion that Rose was not offered an equivalent plea proposal because of two discrepancies between the original and reoffered plea proposals. First, the court determined that the original plea proposal was "illegal in form because it called for separate sentences for Assault with a Weapon and for Rose's designation as a [PFO]." The court explained that, "[u]nder Montana law, sentences imposed based upon an offender's [PFO status] replace the sentence for the underlying felony." Therefore, the court found that the State could not have lawfully reoffered this exact term in 2016. Second, the court determined that, although the reoffered plea proposal contained a specific sentencing recommendation (whereas the original plea proposal left the State largely free to recommend a sentence it deemed appropriate), it was "entirely possible" for the State "to recommend the same aggregate sentence" under both proposals. Furthermore, the court noted that both proposals anticipated that additional

terms would be incorporated into a final plea agreement if Rose accepted the offer. Finding that the original and reoffered plea proposals were equivalent, the court concluded that Rose was not entitled to relief under Rule 70(a).**[2]**

Rose then filed an application with the district court for a COA to appeal the denial of his Rule 70(a) motion. The district court denied Rose's COA application, but noted that it was "not aware of any authority requiring a [COA] to issue from an order denying a motion under Rule 70." The court also ordered that Rose's application for a COA be treated as a timely notice of appeal.

Because Rose did not obtain a COA from the district court, a motions panel of this Court considered whether to issue Rose a COA. Finding it "an open question as to whether a [COA] is required to appeal from the denial of a Rule 70 motion," the motions panel referred Rose's appeal to this panel "to determine whether a COA is required under 28 U.S.C. § 2253(c)(1)(A) and, if so, whether [Rose] is entitled to a COA." The parties were also directed to brief the merits of Rose's appeal.

**II**

We must first resolve an open question in this Circuit: whether 28 U.S.C. § 2253(c)(1)(A) requires a habeas petitioner to obtain a COA to appeal the denial of a motion to enforce a conditional writ of habeas corpus brought under

---

**[2]** The court also found Rose's arguments effectively "moot" and "immaterial," because Rose accepted and the state trial court rejected the final plea agreement.

Federal Rule of Civil Procedure 70(a). For the following reasons, we conclude the statute does require a COA.

## A

It is well established that, before a federal court may entertain an appeal from a "final order in a habeas corpus proceeding," 28 U.S.C. § 2253(c)(1)(A), a petitioner "must first seek and obtain a COA," *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003).[3] A COA is "a jurisdictional prerequisite," *id.* at 336, which serves a "gatekeeping function" by "screen[ing] out issues unworthy of judicial time and attention and ensur[ing] that frivolous claims are not assigned to merits panels," *Thaler*, 565 U.S. at 145.

The Supreme Court in *Harbison v. Bell*, 556 U.S. 180 (2009), clarified that § 2253(c)(1)(A) governs only appeals from "final orders that dispose of the merits of a habeas corpus proceeding—a proceeding challenging the lawfulness of the petitioner's detention." *Id.* at 183. It thus found that "[a]n order that merely denies a motion to enlarge the authority of appointed counsel (or that denies a motion for appointment of counsel) is . . . not subject to the COA requirement." *Id.*

---

[3] Under § 2253(c)(1)(A), a habeas petitioner must obtain a COA from either a district court judge or a circuit judge. *Hanson v. Mahoney*, 433 F.3d 1107, 1111 (9th Cir. 2006); *see also* Fed. R. App. P. 22(b)(1) ("In a habeas corpus proceeding . . . , the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a [COA] under 28 U.S.C. § 2253(c)."). "Habeas Corpus Rule 11(a) requires district judges to decide whether to grant or deny a COA in the first instance." *Gonzalez v. Thaler* (*Thaler*), 565 U.S. 134, 143 n.5 (2012).

We have since "interpreted *Harbison* very narrowly," *Payton*, 906 F.3d at 819, applying § 2253(c)(1)(A)'s COA requirement to appeals from orders denying certain post-judgment motions. In *Winkles*, we held "that a COA is required to appeal the denial of a Rule 60(b) motion for relief from judgment arising out of the denial of a section 2255 motion." 795 F.3d at 1142.**[4]** We found no indication in *Harbison* that an order denying a Rule 60(b) motion—which "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence," *Gonzalez v. Crosby* (*Crosby*), 545 U.S. 524, 528 (2005)—would not be subject to the COA requirement, *Winkles*, 795 F.3d at 1141–42. We determined that the order at issue in *Harbison* was unlike an order on a Rule 60(b) motion, in that the *Harbison* order "was wholly distinct from the habeas petition" and "did not pertain to the district court's adjudication of the habeas petition." *Id.* at 1142. For example, the *Harbison* order neither "touch[ed] on the merits of the habeas petition nor consider[ed] any alleged defects in the integrity of the proceedings." *Id.***[5]** In contrast, "a legitimate Rule 60(b) motion for relief from judgment arising out of the

---

**[4]** Section 2255 provides "habeas-like" relief for federal prisoners, *Clay v. United States*, 537 U.S. 522, 528 (2003), and includes a "functionally identical" COA requirement as petitions under § 2254, *Winkles*, 795 F.3d at 1141. We have thus found cases involving § 2255 motions controlling in the context of a § 2254 habeas petition. *See, e.g.*, *Payton*, 906 F.3d at 818–20.

**[5]** We had also previously "extended *Harbison*" in *Lambright v. Ryan*, 698 F.3d 808 (9th Cir. 2012), so as not to require a COA "to appeal an order modifying a protective order," which "had similarly little to do with the adjudication of the habeas petition." *Winkles*, 795 F.3d at 1142 (citing *Lambright*, 698 F.3d at 817 n.2).

denial of a section 2255 motion pertains to the district court's adjudication of the section 2255 motion." *Id.* We thus required the petitioner to obtain a COA. *Id.*

We then applied *Winkles*'s reasoning in *Payton*, holding that a habeas petitioner must obtain a COA to appeal an order denying a Rule 60(d) motion, 906 F.3d at 820, which "empowers courts to 'set aside a judgment for fraud on the court,'" *id.* at 818 (quoting Fed. R. Civ. P. 60(d)(3)). Citing *Winkles*, we explained that "a COA is required to appeal an order 'pertaining to the district court's adjudication of the habeas petition.'" *Id.* at 819 (alteration adopted) (quoting *Winkles*, 795 F.3d at 1142). This includes (but is not limited to) "orders that 'touch on any alleged defects in the integrity of the proceedings arising out of the district court's adjudication of the petition.'" *Id.* at 819–20 (alterations adopted) (quoting *Winkles*, 795 F.3d at 1142). Because a "Rule 60(d) motion attacks the integrity of the federal habeas proceedings," we concluded that a COA was necessary to appeal a denial. *Id.* at 820.

*Winkles* and *Payton* have defined our task accordingly. To determine whether § 2253(c)(1)(A) requires a habeas petitioner to obtain a COA to appeal an order denying a Rule 70(a) motion to enforce a conditional writ of habeas corpus, we must decide whether such an order "pertain[s] to the district court's adjudication of the habeas petition." *See id.* at 819 (quoting *Winkles*, 795 F.3d at 1142).

**B**

Federal Rule of Civil Procedure 70(a) provides in relevant part:

> If a judgment requires a party . . . to perform
> [a] specific act and the party fails to comply
> within the time specified, the court may order
> the act to be done . . . by another person
> appointed by the court. When done, the act
> has the same effect as if done by the party.

This rule authorizes a district court to enforce its judgment "only when a party refuses to comply with [the] judgment." *McCabe v. Arave*, 827 F.2d 634, 639 (9th Cir. 1987); *see also Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1304 (9th Cir. 1990) ("[Rule 70] applies only to parties who have failed to perform specific acts pursuant to a judgment.").

In his Rule 70(a) motion, Rose alleged that the State failed to comply with the district court's Conditional Writ by not reoffering him an equivalent plea proposal. By not complying with the Conditional Writ, Rose argues that the State failed to cure the constitutional violation adjudicated in his habeas proceedings, which left him "deprived of any remedy for his constitutional injury." He therefore sought enforcement of the Conditional Writ's provision that, "[i]f the State does not meet the deadline for reoffering the [equivalent] plea agreement, Rose shall be immediately released from custody."[6]

Rose maintains that, because his Rule 70(a) motion has "nothing to do with the underlying merits" of the habeas proceedings—"the merits of the litigation . . . have already

---

[6] Respondents do not challenge Rose's use of Rule 70(a) to seek enforcement of the Conditional Writ. Therefore, we do not decide whether Rose's motion was properly brought under Rule 70(a).

been determined before Rule 70 can come into play"—he is not required to obtain a COA to appeal the district court's denial. However, assuming only for the sake of argument that this is true, a bona fide Rule 60(b) motion also has nothing to do with the underlying merits of the habeas proceeding, but the denial of such an order nevertheless requires a COA to appeal. *See Winkles*, 795 F.3d at 1142.[7] "[A] bona fide Rule 60(b) motion 'attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings.'" *Hall v. Haws*, 861 F.3d 977, 985 (9th Cir. 2017) (quoting *Crosby*, 545 U.S. at 532). In other words, a bona fide Rule 60(b) motion challenges "a nonmerits aspect of the first federal habeas proceeding." *Crosby*, 545 U.S. at 534.

Thus, in *Winkles* and *Payton*, we did not limit the applicability of the COA requirement to orders touching on the merits of a habeas petition or considering alleged defects in the integrity of the proceedings. Instead, we used the more inclusive rule that § 2253(c)(1)(A) requires a COA to appeal an order that simply "pertain[s] to the district court's adjudication of the habeas petition," *Payton*, 906 F.3d at 819 (quoting *Winkles*, 795 F.3d at 1142), which we contrasted with orders that are "wholly distinct from the habeas petition" and are therefore not subject to the COA requirement, *Winkles*, 795 F.3d at 1142.

---

[7] The Supreme Court in *Crosby* distinguished a bona fide Rule 60(b) motion from a Rule 60(b) motion "that seeks to add a new ground for relief" or "attacks the federal court's previous resolution of a claim *on the merits*." 545 U.S. at 532. A Rule 60(b) motion seeking relief from judgment on these grounds will be treated as a second or successive habeas petition. *Id.* at 530–32.

Unlike an order to enlarge the authority of appointed counsel or an order modifying a protective order, an order denying a Rule 70(a) motion to enforce a conditional writ is not "wholly distinct from the habeas petition." *See id.* A conditional writ of habeas corpus declares that a petitioner "is being held in custody in violation of his constitutional (or other federal) rights," *Harvest v. Castro*, 531 F.3d 737, 741 (9th Cir. 2008), but delays release of the "petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court," *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). "When a district court issues a conditional habeas writ, it retains jurisdiction to determine compliance." *Jensen v. Pollard*, 924 F.3d 451, 454 (7th Cir. 2019); *see also Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011).

If a state complies with a conditional writ, the petitioner will not be released from detention, because the state has cured the constitutional error and the federal court's residual enforcement jurisdiction ends. *See, e.g.*, *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006) ("'If the state complies with its order, the petitioner will not be released . . . .' [W]hen a state meets the terms of the habeas court's condition, . . . the habeas court does not retain any further jurisdiction over the matter." (quoting *Phifer v. Warden, U.S. Penitentiary*, 53 F.3d 859, 862 (7th Cir. 1995))). However, if a state "fails to cure the constitutional error, *i.e.*, when it fails to comply with the order's conditions, . . . the conditional grant of habeas corpus *requires* the petitioner's release from custody." *Harvest*, 531 F.3d at 750; *see also Gentry*, 456 F.3d at 692 ("[I]f the state fails to comply with [the district court's] order, release will occur. Ordinarily, the only task that remains for the district court is the execution of judgment." (quoting *Phifer*, 53 F.3d at 862)).

Upon the filing of a Rule 70(a) motion to enforce a conditional writ, a district court must decide whether a state has complied with the remedy designed by the district court in the underlying habeas proceedings. *See Jensen*, 924 F.3d at 454–55. This decision will in turn determine whether the state cured the constitutional violation adjudicated in the habeas proceedings or whether the petitioner is entitled to immediate release from his unconstitutional detention. *See Harvest*, 531 F.3d at 750; *see also Gentry*, 456 F.3d at 692.

Therefore, a habeas petitioner must seek and obtain a COA to appeal an order on a Rule 70(a) motion to enforce a conditional writ of habeas corpus. Such an order "pertain[s] to the district court's adjudication of the habeas petition." *See Payton*, 906 F.3d at 819 (quoting *Winkles*, 795 F.3d at 1142).

### III

We next address whether Rose is entitled to a COA. Rose first sought and was denied a COA in the district court. Because Rose has failed to make the requisite showing under 28 U.S.C. § 2253(c)(2), we also deny him a COA.

Section 2253(c)(2) provides that a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." When appealing a district court's procedural ruling (as is the case here), *see Payton*, 906 F.3d at 820, a petitioner makes "a substantial showing" under § 2253(c)(2) by demonstrating that: (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right"; and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This two-step inquiry

should also reflect the standard of review applicable to the order on appeal. *See Winkles*, 795 F.3d at 1143 ("[T]he COA test for appeal of the denial of a Rule 60(b) motion should coincide with the standard of review the court will apply during the appeal. Here, that standard of review is abuse of discretion."); *see also Payton*, 906 F.3d at 821 (incorporating an abuse-of-discretion standard within the COA test for an appeal of a Rule 60(d) motion).

Respondents do not dispute that Rose successfully asserted a valid constitutional claim (in the underlying habeas petition). Thus, to obtain a COA, Rose must show that jurists of reason would find it debatable whether the district court abused its discretion in denying the Rule 70(a) motion to enforce the Conditional Writ. *See Madrigal v. Tellez*, 848 F.3d 669, 672–73 (5th Cir. 2017) (reviewing an order on a Rule 70 motion for abuse of discretion); *see also Jensen*, 924 F.3d at 454–55 (reviewing the district court's interpretation of its conditional writ to determine compliance for abuse of discretion). This question requires us to take "an initial peek at how the appeal would proceed." *Winkles*, 795 F.3d at 1143. Yet, we are mindful that "[t]he COA inquiry . . . is not coextensive with a merits analysis"; it "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims'" so as to avoid "deciding an appeal without jurisdiction." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El*, 537 U.S. at 336–37).

On the merits, Rose argues that the State failed to comply with the Conditional Writ, because several terms in either the reoffered plea proposal or the final plea agreement were not "equivalent" to those contained in the original plea proposal.

Therefore, he contends the district court abused its discretion in denying his Rule 70(a) motion.

To prevail on appeal, Rose must show that the district court's decision was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record," *Lambright*, 698 F.3d at 817 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). Although "the 'standard for obtaining a COA is not a particularly exacting one,'" *Carter v. Davis*, 946 F.3d 489, 522 (9th Cir. 2019) (quoting *Wilson v. Belleque*, 554 F.3d 816, 826 (9th Cir. 2009)), after taking an initial peek at the merits, we do not find that reasonable jurists would debate whether the district court abused its discretion in denying Rose's motion.[8]

Rose first argues that the specific sentencing recommendation included in the reoffered plea proposal was not equivalent to the original plea proposal, which provided only that the State would be "free to argue for what it deems is an appropriate sentence." Although Rose concedes that the district court was correct in finding that the State could have recommended the same aggregate sentence under both proposals, he asserts that the State's decision to recommend the maximum sentence in the reoffered plea proposal foreclosed the possibility that the evidence and argument at sentencing would compel a more lenient sentencing recommendation.

---

[8] Rose himself accepted the terms of the reoffered plea agreement before the state trial court rejected it, as the state trial court was allowed to do under the terms of the Conditional Writ.

However, it is not unreasonable to conclude that the original and reoffered plea proposals were equivalent in this respect. Rose's argument ignores the fact that, when the State made its sentencing recommendation in the reoffered plea proposal, it had already heard the evidence and arguments at Rose's sentencing hearing in 2004. Therefore, Rose was not deprived of the opportunity to compel a more lenient sentencing recommendation. But, even if he had been, the original plea proposal never committed the State to consider the evidence and arguments at sentencing before determining its sentencing recommendation. Rose also provides us no indication in the record that the State would have done so in 2003. Thus, it is beyond reasonable debate that the district court did not abuse its discretion in finding that the two proposals were equivalent despite the State's specific sentencing recommendation in the reoffered plea proposal.

Rose next argues that a number of conditions contained in the final plea agreement were completely missing from the original plea proposal—namely, certain conditions of supervision and a waiver of the right to appeal. But as the district court explained, both proposals contemplated the incorporation of additional terms and conditions into a final plea agreement if Rose accepted the offer. Furthermore, Rose identifies no term in the final plea agreement in 2016 that would not have been present in a final plea agreement had one been reached in 2003. Therefore, Rose's comparison between the final plea agreement and the original plea proposal does not provide grounds upon which reasonable jurists would debate whether the district court was within its discretion in finding that the original and reoffered plea proposals were equivalent.

Lastly, Rose highlights that the original plea proposal provided for a separate 10-year sentence with 5 years suspended for Rose's status as a PFO, *see* Mont. Code Ann. § 46-18-502, which would run consecutively with his sentence for assault with a weapon (an offense carrying a statutory maximum of 20 years, *see* Mont. Code Ann. § 45-5-213(2)(a)). On the other hand, the reoffered plea proposal provided for a 30-year sentence with 5 years suspended for assault with a weapon—presumably the combination of a 20-year maximum sentence under Mont. Code Ann. section 45-5-213(2)(a) with (what is in effect) a 10-year sentencing enhancement for Rose's PFO status.

Because "sentences imposed based on an offender's status as a [PFO] *replace* the sentence for the underlying felony" under Montana law, *State v. Gunderson*, 237 P.3d 74, 84 (Mont. 2010), the district court explained that, had the State reoffered Rose the exact same term as the original plea proposal with respect to Rose's PFO status, such a proposal would have been "illegal in form." Nevertheless, the district court found the original and reoffered plea proposal equivalent, finding it possible for Rose to obtain a combined 30-year sentence with 5 years suspended for assault with a weapon and his PFO status under both proposals. Rose does not contest the district court's reasoning.

In conclusion, none of Rose's arguments demonstrate that reasonable jurists would debate whether the district court abused its discretion in finding that the State complied with the Conditional Writ and thus in denying Rose's Rule 70(a)

motion. Consequently, Rose has failed to make a substantial showing under § 2253(c)(2) to permit the issuance of a COA.

**Certificate of Appealability DENIED and appeal DISMISSED.**