# FILED

07/06/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0462

DA 19-0462

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 164N

ROBERT L. ROSE,

Petitioner and Appellant,

v.

STATE OF MONTANA,

Respondent and Appellee.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV-19-78
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Robert L. Rose, Self-Represented, Deer Lodge, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

William E. Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  May 26, 2021

Decided:  July 6, 2021

Filed:

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Robert Rose appeals from a May 21, 2019 Twenty-First Judicial District Court order denying his petition for postconviction relief without a hearing. We affirm.

¶3 In 2003, Rose was convicted of aggravated kidnapping, assault with a weapon, and assault on a peace officer and received a 100-year sentence with 20 years suspended. *State v. Rose*, 2009 MT 4, ¶¶ 1, 34-35, 348 Mont. 291, 202 P.3d 749 (*Rose I*). This Court affirmed the conviction. *Rose I*, ¶ 125. Rose subsequently sought postconviction relief, claiming, among other things, that his counsel had failed to inform him of a favorable plea offer by the State, constituting ineffective assistance of counsel. *State v. Rose*, 2013 MT 161, ¶¶ 6-9, 370 Mont. 398, 304 P.3d 387 (*Rose II*). Judge Langton denied the petition and this Court affirmed the decision, reasoning that the State's plea offer actually contained an illegal sentence such that Rose could not show prejudice. *Rose II*, ¶¶ 7, 25.

¶4 Subsequently, Rose sought habeas relief in United States District Court. *See Rose v. Kirkegard*, CV 13-156-M-DWM-JCL, 2016 U.S. Dist. LEXIS 82133 (D. Mont. May 5, 2016) (*Kirkegard I*). United States Magistrate Judge Jeremiah C. Lynch disagreed with this Court's *Rose II* decision and determined that Rose had shown a reasonable

2

probability that he would have accepted the earlier plea offer had he been afforded effective assistance of counsel and been notified of the offer. *Kirkegard I*, 2016 U.S. Dist. LEXIS at *8-13. Judge Lynch recommended that the prosecution be required to reoffer the equivalent terms of the original proposed plea agreement to Rose, allowing a state district court judge to exercise discretion in determining whether or not to accept the plea deal pursuant to *Lafler v. Cooper*, 566 U.S. 156, 171, 132 S. Ct. 1376, 1389 (2011). *Kirkegard I*, 2016 U.S. Dist. LEXIS at *17. United States District Judge Molloy adopted Judge Lynch's findings and recommendations. *Rose v. Kirkegard*, CV 13-156-M-DWM-JCL, 2016 U.S. Dist. LEXIS 82007, at *4 (D. Mont. June 23, 2016).

¶5 Pursuant to the United States District Court order, the State made Rose a plea offer, which Rose accepted. *State v. Rose*, 2017 MT 289, ¶ 12, 389 Mont. 374, 406 P.3d 443 (*Rose III*). After a hearing, at which Rose was represented by counsel, Judge Langton rejected the plea agreement, leaving Rose's convictions undisturbed. *Rose III*, ¶ 13. Judge Langton noted Rose's "complete unwillingness to accept any responsibility for his actions" at the time the original plea agreement had been offered, concluding that Rose would not have accepted such a plea deal in 2003 if it had been communicated to him by his attorney. *Rose III*, ¶ 13. Judge Langton determined that rejecting the newly-proposed plea deal was proper under *Lafler's* direction to put the defendant in a position as near as possible to that occupied at the time of the original plea deal offer. *Rose III*, ¶ 13.

¶6 Rose appealed to this Court. In *Rose III*, we noted that "Rose argues that the Federal District Court concluded Rose had demonstrated he would have accepted the Plea Offer, which precluded the [state] District Court from rejecting the reoffered plea agreement."

3

*Rose III*, ¶ 18. We rejected Rose's argument, concluding that the District Court's decision was within the discretion it was directed to exercise by the Federal District Court's remand order, pursuant to *Lafler*. *Rose III*, ¶ 26.

¶7 Rose then returned to federal court and filed a motion to enforce under Fed. R. Civ. P. 70(a) arguing that the discrepancies between the original and reoffered plea proposals meant that the State had failed to reoffer Rose the equivalent plea proposal and was therefore in violation of the federal court's writ. *See Rose v. Guyer*, 961 F.3d 1238 (9th Cir. 2020). The Federal District Court denied this motion. *Guyer*, 961 F.3d at 1242. It determined that the State could not reoffer the exact same terms as the original offer, which was "illegal in form" due to implementing separate sentences for Assault with a Weapon and Rose's designation as a Persistent Felony Offender, but that the State could "'recommend the same aggregate sentence.'" *Guyer*, 961 F.3d at 1242-43. Moreover, it found that any remaining discrepancy was attributable to both proposals' anticipation of additional terms being incorporated into a final agreement if Rose accepted the offer. *Guyer*, 961 F.3d at 1243.

¶8 Rose sought review from the Ninth Circuit. *Guyer*, 961 F.3d at 1243. After reviewing Rose's arguments, the Ninth Circuit denied Rose's request for a certificate of appeal, concluding on the merits that reasonable jurists would not debate whether the district court abused its discretion in finding that the State complied with the federal writ. *Guyer*, 961 F.3d at 1248.

¶9 Rose filed his second petition for postconviction relief on February 27, 2019, alleging nine claims of ineffective assistance of counsel during the remand proceeding

4

leading up to Judge Langton's order rejecting the reoffered plea deal. On April 12, 2019, Rose moved to disqualify Judge Langton from Rose's petition for cause. Judge Langton referred the matter to this Court. Judge Langton then retired from the bench and this Court denied Rose's motion as moot.

¶10 District Court Judge Jennifer B. Lint then considered Rose's petition for postconviction relief, addressing and rejecting all nine of Rose's claims of ineffective assistance of counsel in a May 21, 2019 order. Rose submitted a Motion to Amend Judgment and/or Make Additional Findings, which was subsequently denied. Rose appeals.

¶11 This Court reviews a district court's denial of a petition for postconviction relief to determine whether its factual findings are clearly erroneous and whether its legal conclusions are correct. *Garding v. State*, 2020 MT 163, ¶ 12, 400 Mont. 296, 466 P.3d 501 (citations omitted). Ineffective assistance of counsel (IAC) claims are mixed questions of law and fact, reviewed de novo. *Garding*, ¶ 12.

¶12 Rose argues that the District Court erred in denying his nine claims for relief based on ineffective assistance of counsel in his most recent motion for postconviction relief. These claims are:

> (1) defense counsel failed to preserve any issue for appeal when representing Rose in the 2016 federal court remand proceedings;
>
> (2) defense counsel failed to challenge the district court's revisitation of the federal court's findings regarding Rose's underlying *Strickland* claims, pursuant to doctrines of issue preclusion, claim preclusion, res judicata, and the Supremacy Clause of the United State Constitution;

5

(3) defense counsel failed to challenge the district court's written judgment and order rejecting the plea agreement on grounds that Rose did not express willingness to accept responsibility in 2002 and 2003;

(4) defense counsel failed to object to the district court's acceptance of jurisdiction to assess the acceptance of the plea agreement when the State failed to follow the federal court's order to timely offer equivalent terms of the 2003 plea offer;

(5) defense counsel failed to identify and advise Rose of the available post-judgment Rule 60(b) or Rule 70 motions before a federal court challenging the State's new offer as containing inequivalent terms;

(6) defense counsel was ineffective in advising Rose to accept the unequivalent plea rather than advising to file a post-judgment motion in federal court;

(7) defense counsel failed to identify the State's breaches of the plea while at the same time failing to advance motions and objections to preserve for appeal a motion to reverse guilty plea and request remedy of enforcement of the plea agreement;

(8) defense counsel failed to identify and inform Rose of the significance and legal ramifications of the prosecutor's alleged in-chambers comments that undermined the agreement as a whole; and

(9) if the court determines that any other meritorious or potentially meritorious issue raised herein was not properly preserved by defense counsel either in trial court proceedings or on appeal therefrom, Rose asserts such failure to be prejudicial and ineffective under federal and state IAC standards.

¶13　To prevail on an IAC claim, Rose must show that his counsel's representation fell below an objective standard of reasonableness, and that the deficient performance prejudiced the defense. *State v. Bekemans*, 2013 MT 11, ¶¶ 29-30, 368 Mont. 235, 293 P.3d 843 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

¶14　Rose's first three claims all take issue with the state District Court's decision to reject the reoffered plea agreement during the 2016 remand. These were already addressed by this Court in *Rose III*. First, this Court conducted a full review of the District Court's

6

refusal to accept the reoffered plea agreement in *Rose III*, concluding that the District Court did not abuse its discretion. *See Rose III*, ¶¶ 23-26. Thus, Rose was not prejudiced by his counsel's alleged failure to preserve specific issues for appeal. Second, this Court already addressed Rose's contention that, pursuant to the Supremacy Clause or the doctrines of issue and claim preclusion, the Federal Court findings should have barred the State District Court from finding, once again, that Rose would not have accepted the plea at the time it was originally offered. *See Rose III*, ¶ 24 ("*Lafler* and the Federal District Court invited the [State] District Court to exercise its discretion between either vacating Rose's conviction and accepting the reoffered plea or leaving his conviction undisturbed."). Third, this Court did specifically address the District Court's conclusion that Rose's behavior in 2002 and 2003 indicated an unwillingness to accept responsibility that suggested he would not have taken the offer at the time it was originally presented. *Rose III*, ¶ 24 ("The District Court was familiar with Rose and his behavior at the time the Plea Offer was first made and concluded Rose would not have accepted it because he was unwilling to accept responsibility at the time it was first made."). Thus, any alleged failure by Rose's counsel to raise particular issues did not prejudice Rose, as they were fully addressed and rejected by this Court in *Rose III*.

¶15 Rose's claims four through six are based on Rose's contention that the State failed to offer him the same plea agreement as the original 2003 offer. The Federal District Court rejected this argument during Rose's Fed. R. Civ. P. 70(a) motion to enforce. *See Guyer*, 961 F.3d at 1242. When Rose sought appellate review, the Ninth Circuit addressed the arguments on the merits and, determining that reasonable jurists would not debate the

7

matter, declined to provide Rose with a certificate of appeal with which to proceed further.

*Guyer*, 961 F.3d at 1247-48.

Rose first argues that the specific sentencing recommendation included in the reoffered plea proposal was not equivalent to the original plea proposal, which provided only that the State would be "free to argue for what it deems is an appropriate sentence." Although Rose concedes that the district court was correct in finding that the State could have recommended the same aggregate sentence under both proposals, he asserts that the State's decision to recommend the maximum sentence in the reoffered plea proposal foreclosed the possibility that the evidence and argument at sentencing would compel a more lenient sentencing recommendation.

However, it is not unreasonable to conclude that the original and reoffered plea proposals were equivalent in this respect. Rose's argument ignores the fact that, when the State made its sentencing recommendation in the reoffered plea proposal, it had already heard the evidence and arguments at Rose's sentencing hearing in 2004. Therefore, Rose was not deprived of the opportunity to compel a more lenient sentencing recommendation. But, even if he had been, the original plea proposal never committed the State to consider the evidence and arguments at sentencing before determining its sentencing recommendation. Rose also provides us no indication in the record that the State would have done so in 2003. Thus, it is beyond reasonable debate that the district court did not abuse its discretion in finding that the two proposals were equivalent despite the State's specific sentencing recommendation in the reoffered plea proposal.

Rose next argues that a number of conditions contained in the final plea agreement were completely missing from the original plea proposal— namely, certain conditions of supervision and a waiver of the right to appeal. But as the district court explained, both proposals contemplated the incorporation of additional terms and conditions into a final plea agreement if Rose accepted the offer. Furthermore, Rose identifies no term in the final plea agreement in 2016 that would not have been present in a final plea agreement had one been reached in 2003. Therefore, Rose's comparison between the final plea agreement and the original plea proposal does not provide grounds upon which reasonable jurists would debate whether the district court was within its discretion in finding that the original and reoffered plea proposals were equivalent.

Lastly, Rose highlights that the original plea proposal provided for a separate 10-year sentence with 5 years suspended for Rose's status as a PFO

[(Persistent Felony Offender)], see Mont. Code Ann. § 46-18-502, which would run consecutively with his sentence for assault with a weapon (an offense carrying a statutory maximum of 20 years, *see* Mont. Code Ann. § 45-5-213(2)(a)). On the other hand, the reoffered plea proposal provided for a 30-year sentence with 5 years suspended for assault with a weapon—presumably the combination of a 20-year maximum sentence under Mont. Code Ann. section 45-5-213(2)(a) with (what is in effect) a 10-year sentencing enhancement for Rose's PFO status.

Because "sentences imposed based on an offender's status as a PFO *replace* the sentence for the underlying felony" under Montana law, *State v. Gunderson*, 2010 MT 166, 357 Mont. 142, 237 P.3d 74, 84 (Mont. 2010), the district court explained that, had the State reoffered Rose the exact same term as the original plea proposal with respect to Rose's PFO status, such a proposal would have been "illegal in form." Nevertheless, the district court found the original and reoffered plea proposal equivalent, finding it possible for Rose to obtain a combined 30-year sentence with 5 years suspended for assault with a weapon and his PFO status under both proposals. Rose does not contest the district court's reasoning.

In conclusion, none of Rose's arguments demonstrate that reasonable jurists would debate whether the district court abused its discretion in finding that the State complied with the Conditional Writ[.]

¶16 *Rose*, 961 F.3d at 1247-48 (alteration omitted). We find the Ninth Circuit's reasoning compelling and adopt it here. Because the State's offer was equivalent to the originally-offered plea, Rose cannot show ineffectiveness by his counsel or resultant prejudice on the basis of this contention.

¶17 In Rose's seventh claim, he argued that the State was obligated to file an amended information dismissing the two felonies *before* Judge Langton reviewed the plea agreement. Under *Lafler*, Judge Langton was directed to "exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Lafler*, 566 U.S. at 171; 132 S. Ct. at 1389. Though the State would have been obligated to file an amended information dismissing the two felonies if Judge Langton

9

had accepted the plea agreement, Judge Langton did not, and there was no need for the State to amend the information pursuant to the agreement.

¶18     In claim eight, Rose argued that defense counsel failed to identify and inform Rose of the "legal ramifications" of the prosecution's alleged in-chambers comments opining that Rose would not have accepted the plea offer had it been tendered in 2003. Rose also alleges that, at an August 11, 2016 hearing, the court stated, "I know the State is not a willing participant in this agreement," to which the prosecutor responded, "we are obligated and do support the plea agreement."[1] On appeal, Rose argues that a prosecutor may not, at sentencing, undercut the sentence the prosecutor has obligated him or herself to recommend through a plea agreement. *State v. Rardon*, 2002 MT 345, ¶ 22, 313 Mont. 321, 61 P.3d 132 ("[I]t is not acceptable for a prosecutor to aggressively solicit testimony that is clearly intended to undermine the plea agreement and to convince the sentencing court that a plea bargained sentence recommendation should not be accepted.").

¶19     The question, under *Lafler*, of whether Rose would have, in 2003, accepted the prosecution's proposed plea agreement, is distinct from the question of whether a court should impose the sentence recommended by the prosecution pursuant to a valid plea deal. Certainly, under *Rardon*, the State must uphold its end of a plea agreement by refraining from surreptitiously arguing for a sentence beyond what the State obligated itself to recommend. Here, the State indicated it intended to do just that when it told the judge that "we are obligated and do support the plea agreement." The prosecutor's statements in

---

[1] Rose did not file this transcript with his petition or this appeal.

10

chambers, allegedly opining that Rose would not have accepted the agreement if he had been made aware of it in 2003, goes to the preliminary inquiry directed by *Lafler*. Rose points to no authority suggesting that the prosecution must refrain from taking a position on the question of whether a defendant would have accepted a deal when it was first offered. Pursuant to *Lafler*, Judge Langton determined that Rose would not have accepted the plea agreement when originally offered, without the benefit of hindsight that had accrued after trial. Rose makes us aware of no "legal ramifications" of the alleged statements made by the prosecutor in chambers, and the prosecution's statement of support for the recommended sentence was proper. Therefore, Rose has not shown ineffectiveness on the part of his counsel or resultant prejudice.

¶20 Rose's final claim, asserting ineffective assistance of counsel "[i]f this court determines that any other meritorious or potentially meritorious issue raised herein was not properly preserved by defense counsel either in trial court proceedings or on appeal therefrom" was properly dismissed as failing to meet the statutory threshold of § 46-21-104, MCA (requiring a petitioner for postconviction relief to "identify all facts" and include "appropriate arguments and citations and discussion of authorities").

¶21 Additionally, Rose raises on appeal a claim of judicial bias and vindictiveness by Judge Langton during the 2016 remand proceedings in which Judge Langton refused to accept the reoffered plea agreement. Rose's claim is procedurally barred, as he could have raised it on direct appeal of Judge Langton's decision. *See* § 46-21-105(2), MCA.

¶22 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

11

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶23     Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE